[Civ. No. 828. Fifth Dist. Jan. 18, 1968.]

PATRICIA GEAR, Plaintiff and Appellant, v. CHARLES B. WEBSTER, Defendant and Respondent.

J. Richard Thomas for Plaintiff and Appellant.

Arthur Stahl as Amicus Curiae on behalf of Plaintiff and Appellant.

Di Giorgio, Davis & Nairn, Di Giorgio, Davis, Nairn & Klein and John M. Nairn for Defendant and Respondent.

STONE, J.—Appellant, a real estate salesman, and respondent broker, her employer, were members of the Bakersfield Board of Realtors, a voluntary association. Salesmen held associate, nonvoting memberships, while brokers were classified as active, voting members. Appellant agreed to abide by the "Realtor's Code of Ethics" and the bylaws of the association, which at that time recommended that controversies between members be submitted for arbitration. Two years later the bylaws were amended to require members to "submit to arbitration by the Board's facilities all disputes with any other member, if either party to the dispute should so request."

Subsequently a dispute arose between appellant and respondent over a real estate commission. Appellant filed an action in the Kern County Superior Court to recover the share of commission she alleged to be due her out of a sale which was then in escrow. Respondent's demurrer was sustained. Appellant amended her complaint and, again, respondent demurred. In his points and authorities in support of the demurrer, respondent for the first time asserted the requirement in the bylaws that disputes be arbitrated, alleging that on March 29 he requested that appellant submit the dispute to arbitration. ▉ The demurrer was quite properly overruled, as a request to arbitrate may not be raised in that manner. On April 21 respondent formally petitioned the court for an order to submit the dispute to arbitration.

Appellant filed objections to the petition, alleging that she had not entered into an arbitration agreement, that respondent had waived arbitration by appearing in the action by demurrer before he petitioned for arbitration, and that any board of arbitrators convened in accordance with the bylaws of the Bakersfield Board of Realtors, providing for two brokers and one salesman, would be prejudiced in favor of respondent, a past president of the board.

After a full hearing, the trial court ordered the dispute arbitrated in accordance with the rules of the Bakersfield Board of Realtors, and stayed further proceedings in the court action. Arbitration proceedings followed, resulting in an award that appellant take nothing. The superior court approved the award, and this appeal followed.

Both sides argue the merits of arbitration in general and those aspects peculiar to this case, but these questions are peripheral. The basic questions are contractual, first, whether a contract emanating from membership in a voluntary association can, in addition to its primary function of governing relations between the member and the association, also constitute a contract between the members; second, whether a member of such an association who has agreed to be bound by its bylaws is bound by amendments made thereafter.

Associations similar to the Bakersfield Board of Realtors, here involved, are not uncommon. In *Lawson* v. *Hewell,* 118 Cal. 613, 618-619 [50 P. 763, 49 L.R.A. 400], it is said: "Individuals who associate themselves in a voluntary fraternal organization may prescribe conditions upon which membership in the association may be acquired or upon which it may continue, and may also prescribe rules of conduct for themselves during their membership, with penalties for their violation, and the tribunal and mode in which the offenses shall be determined and the penalty enforced. These rules constitute their agreement, and unless they contravene some law of the land are regarded in the same light as the terms of any other contract." (See also *DeMille* v. *American Federation of Radio Artists,* 31 Cal.2d 139, 146 [187 P.2d 769, 175 A.L.R. 382]; *American Society of Composers, Authors & Publishers* v. *Superior Court,* 207 Cal.App.2d 676, 689 [24 Cal. Rptr. 772].)

In accepting membership, appellant as well as the other members signed the following declaration: "This is to advise that I have read the Realtors' Code of Ethics and the By-Laws of the above named Board and if elected to membership I agree to adhere thereto."

Clearly, then, appellant entered into a contract when she signed the bylaws, but there remains the question whether that pledge limited her obligations and duties to the association as such, or whether the contract also governed the relations between the members. The answer depends upon the intent of the members as expressed in the agreement embodied in the constitution and bylaws to which each member commit-

ted himself. In discussing intent, Williston on Contracts, Third Edition, section 21, page 39, points out that: "It may be guessed that where it is stated that an intent to create a legal relation is the test of a contract, the intent is frequently fictitiously assumed; and that a deliberate promise seriously made is enforced irrespective of the promisor's views regarding his legal liability. The only intent of the parties to a contract which is essential is an intent to say the words and do the acts which constitute their manifestations of assent."

In *Robinson* v. *Templar Lodge, I.O.O.F.*, 117 Cal. 370 [49 P. 170, 59 Am.St.Rep. 193], the court said, in construing bylaws of an association requiring arbitration, at page 375: "In an ordinary case I should be loth to hold that one can effectually waive his right to sue in a court of law before his right of action has arisen, or that he can in advance agree to an arbitration, but it has been so held with reference to these mutual benefit societies, and, with reference to them, I think the regulation reasonable."

It is interesting, and we think significant, that the reluctance of the court in *Robinson* to approve arbitration has given way to a presumption in favor of arbitration. In *O'Malley* v. *Wilshire Oil Co.*, 59 Cal.2d 482, 490-491 [30 Cal.Rptr. 452, 381 P.2d 188], the court said: "Arbitration is, of course, a matter of contract, and the parties may freely delineate the area of its application. The court's role, according to the Supreme Court, however, must be strictly limited to a determination of whether the party resisting arbitration agreed to arbitrate. A heavy presumption weighs the scales in favor of arbitrability; an order directing arbitration should be granted 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' "

We conclude that by agreeing to abide by the bylaws, appellant was bound to arbitrate her dispute with another member, here, respondent.

This leads us to appellant's contention that she was bound by the bylaws as they existed when she signed them, not as they were later amended. However, at the time she signed them, the bylaws provided for amendment. At page 621 of *Lawson* v. *Hewell, supra*, 118 Cal. 613, the court said: "The contractual relation between the association and one of its members is that which exists by virtue of the rules of the association, and so long as the association acts toward him in

accordance with these rules there is no violation of this contract. This relation is to be determined, however, by a consideration of the entire body of the rules governing the association, and is not limited to those existing at the time the individual became a member. Unless the rules at that time placed a limitation upon the power of the association to make any change or amendment therein, any amendment or change adopted in accordance with the mode provided by the association therefor is binding upon each of the members.''

In the early case of *Stohr* v. *San Francisco Musical Fund Society,* 82 Cal. 557, 560 [22 P. 1125], it was held that the plaintiff was bound by an amendment to the bylaws of an association changing the period for which members were entitled to sickness benefits, even though the amendment was effected after the plaintiff became ill. The court held that the plaintiff's right to benefits under the bylaws was a contract right which was subject to change without his consent, since the bylaws provided for amendment. (See *Bowie* v. *Grand Lodge of the Legion of the West,* 99 Cal. 392 [34 P. 103].)

 Appellant seeks to avoid the effect of the compulsory arbitration bylaw upon the ground that as a real estate salesman she was forced to join the realty board to get the particular job she had, and that she received no consideration in return for becoming a member. No evidence was submitted to the lower court to support her charge of economic coercion. As to her contention that she received no consideration, respondent points out that membership in the association gave appellant access to multiple listings maintained by the association, made available information pertinent to the real estate business in the area, and provided her with periodic advice concerning changes in real estate law by informational memoranda.

 It is also argued that as an associate member appellant possessed a membership right subordinate to brokers, who were classed as active members. This distinction was known to her when she joined the association, so that she voluntarily accepted membership under the conditions specified in the bylaws; there is nothing unusual about an association maintaining different classes of membership with differing voting privileges or other rights. Moreover, appellant presented no evidence from which it can be inferred that the classifications of ''associate member'' and ''active member'' are unreasonable or discriminatory, or that a salesman associate member

cannot become an active member upon obtaining a broker's license.

▆ Appellant next contends that the composition of the board of arbitrators provided for in the bylaws is inequitable and deprived her of a fair hearing, which requires this court to reverse the trial court's approval of the arbitration award. The bylaws specify that two arbitrators shall be broker members and one must be a salesman. This method of selecting arbitrators differs, of course, from the classic procedure whereby each side selects one arbitrator and the two selected appoint the third arbitrator. However, section 1281.6 of the Code of Civil Procedure, which provides for court appointment of arbitrators, is prefaced by the provision that: ''If the arbitration agreement provides a method of appointing an arbitrator, such method shall be followed.''

The method provided in the bylaws was followed, the procedure complied with the contract to which appellant was bound, and we are cited no instance of fraud or other equitable ground for setting aside the contract. Furthermore, there is nothing in the record from which it can be inferred that the award of the arbitrators is not supported by the evidence adduced at the hearing. The award was unanimous—the salesman member found against her as well as the broker members —and we are cited no overbearing by any arbitrator that would justify this court in setting aside the trial court's approval of the arbitration award.

▆ Finally, appellant contends respondent waived his right to arbitrate. This contention can hardly be predicated upon a lapse of time comparable to the doctrine of laches, since less than 60 days elapsed from the filing of appellant's complaint in the superior court to the filing of respondent's petition and request for arbitration. The question narrows to whether the pleadings filed by respondent in the superior court, and his participation in proceedings therein, constituted a waiver.

At the time of filing the original complaint, appellant obtained a temporary restraining order preventing Title Insurance & Trust Co. from proceeding with a pending escrow, upon the assertion that the commission she sought had been earned in connection with the sale of the property being transferred. Respondent demurred to the complaint and filed points and authorities in opposition to the issuance of a preliminary injunction to stay further escrow proceedings. The matter was partially heard on March 9, 1966, and con-

cluded on March 11, 1966. On March 16 the court denied a preliminary injunction and dissolved the temporary restraining order. On March 29 respondent requested the Bakersfield Board of Realtors to arbitrate the dispute. Two days later, March 31, he demurred to appellant's first amended complaint, asserting that he had demanded arbitration. On April 21 respondent followed the procedure prescribed by statute, and petitioned the court for an order that the parties submit the controversy to arbitration in accordance with Code of Civil Procedure section 1281.2.

It is true that bringing suit on a basic contract without seeking arbitration, as occurred in *Case* v. *Kadota Fig Assn.*, 35 Cal.2d 596 [220 P.2d 912], constitutes a waiver of the right to thereafter demand arbitration, but the demurrers filed by respondent did not touch the basic issues in the case. Certainly filing a demurrer does not constitute a waiver of the right to seek affirmative relief by answer or cross-complaint after the demurrer is overruled, and neither should filing a demurrer waive the right to petition for arbitration. (*Bertero* v. *Superior Court*, 216 Cal.App.2d 213 [30 Cal.Rptr. 719].)

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.

A petition for a rehearing was denied February 14, 1968, and appellant's petition for a hearing by the Supreme Court was denied March 13, 1968.