[Civ. No. 28875. First Dist., Div. Four. Mar. 15, 1972.]

DAVID WARE, Plaintiff and Respondent, v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant
and Appellant.

36

## COUNSEL

Orrick, Herrington, Rowley & Sutcliffe, Richard J. Lucas and W. Reece Bader for Defendant and Appellant.

Feeney & Sparks and Joseph C. Barton for Plaintiff and Respondent.

## OPINION

**BRAY, J.**[*]—Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. appeals, pursuant to Code of Civil Procedure section 1294, subdivision (a), from an order denying petition to order arbitration.

### Questions Presented

1. Was there an arbitration agreement?

2. Is the forfeiture provision of the arbitration agreement legal?

3. Does Labor Code section 229 prohibit arbitration in this dispute?

### Record

Plaintiff, a former employee of Merrill Lynch, Pierce, Fenner & Smith, Inc. (hereinafter Merrill Lynch), on behalf of himself and other former employees similarly situated, filed this action for declaratory relief and damages. The gravamen of the complaint involves a provision, Article 11.1, in the Merrill Lynch Profit Sharing Plan for Employees. The complaint seeks (1) a declaration that Article 11.1 is invalid under applicable law (Bus. & Prof. Code, § 16600), and (2) that defendant is obligated to pay to plaintiff the amount of the profit sharing rights which Merrill Lynch claims were forfeited and to which plaintiff claims to be entitled. Merrill Lynch answered and filed a petition for order of arbitration. Plaintiff then filed a motion for order determining that the action is maintainable as a class action, and filed affidavits in support of five individuals moving to have themselves made parties of record as members of the class. The petition for arbitration was denied. The motion for class action and to admit the five persons submitting affidavits as plaintiffs was granted. Merrill Lynch appeals from the order denying arbitration.

### Facts

In July 1958 plaintiff Ware became an employee of Merrill Lynch at its San Francisco office as an account executive, remaining such until March 1969 when he voluntarily terminated his employment. He then became an employee of another securities broker, competitive with Merrill Lynch. As a full-time employee of Merrill Lynch he was eligible to participate in its profit sharing plan. From time to time Merrill Lynch made contributions to this plan (employees did not contribute) which were credited to plain-

---

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

tiff's account in the profit sharing trust fund. At the termination of his employment plaintiff's account in the fund was credited with 733 vested units and 1,258 unvested units. When plaintiff became eligible to participate in the plan he was given an explanatory brochure and a copy of the plan.

Article 11.1 of the plan provides:

"A Participant who, in the determination of the Committee, voluntarily terminates his employment with the Corporation . . . and engages in an occupation which is, in the determination of the Committee, competitive with the Corporation . . . shall forfeit all rights to any benefits otherwise due or to become due from the Trust Fund with respect to units credited for fiscal years subsequent to the fiscal year ended December 30, 1960." On April 18, 1969 the administrative committee of the plan made a determination that plaintiff had voluntarily terminated his employment with Merrill Lynch and had entered into competitive employment. The committee thereupon caused to be forfeited any and all rights plaintiff had in the plan.

Merrill Lynch is a member of the New York Stock Exchange which is registered under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. § 78  which act authorizes the enforcement of rules and bylaws promulgated by said exchange.

Rule 345 of the exchange requires the registration and approval by the exchange of any person employed by a member in the capacity of a registered representative. Plaintiff executed a written application for approval of employment on Form RE-1 of the exchange and was approved and registered. Paragraph 30j of the RE-1 form executed by plaintiff states: "I agree that any controversy between me and any . . . member organization arising out of my employment on the termination of my employment by and with such . . . member organization shall be settled by arbitration at the instance of any such party in accordance with the Constitution and rules then obtaining of the New York Stock Exchange."

Defendant alleged in its petition for arbitration that all members of the class were subject to the above arbitration provision since each had individually executed the RE-1 form. This is not denied. Plaintiff contends that a class action cannot be arbitrated. Defendant claims that it is not trying to arbitrate a class action but seeking to arbitrate the dispute with the representative of the class under an agreement that also applies to all other members of the class as each has signed a similar agreement. Defendant's contention in this regard is well answered in *Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1971) 20 Cal.App.3d 668, 672 [97 Cal.Rptr. 811], where the identical contract was attacked by a former employee of Merrill

Lynch: "Respondent asserts that because he brought his action in behalf of the class of persons affected by the contract arbitration should not be required. But if all employees similarly situated have signed the same arbitration agreement as that which respondent challenges, all are equally bound. If the agreement is valid, it is valid as to all members of the class. It would be inappropriate to allow respondent and the other members of the class he claims to represent to evade the terms of the agreement simply by bringing their action together as a 'class' rather than as individuals."

Section 1281.2 of the Code of Civil Procedure provides in relevant part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; or (b) Grounds exists for the revocation of the agreement." No contention is made that defendant waived its right to arbitration as stated in paragraph 30j of the RE-1 form.

On the record there is no substantial conflict in the facts. ■ Where, as here, the issue is one of law only, findings of fact are not required. (*Allstate Ins. Co.* v. *Orlando* (1968) 262 Cal.App.2d 858, 867 [69 Cal.Rptr. 702].) In *Loscalzo* v. *Federal Mut. Ins. Co.* (1964) 228 Cal.App.2d 391 [39 Cal.Rptr. 437], where petition for arbitration was denied without the trial court's indicating the basis for denial, and in *Bianco* v. *Superior Court* (1968) 265 Cal.App.2d 126 [71 Cal.Rptr. 322], where petition for arbitration was granted without the court's indicating the basis for such order, it was held that the reviewing court must determine the correctness of the ruling from the record, and in doing so must determine if the record supports any of the contentions of the parties opposing the arbitration. We proceed to make such determination.

Plaintiff opposed the granting of the petition for arbitration on three basic grounds: (1) no written agreement to arbitrate existed; (2) the contract was an adhesive one and therefore revoked; (3) the issue in the dispute and the legality of the forfeiture provision cannot be arbitrated.

### 1. *Arbitration agreement.*

■ The written agreement to arbitrate did exist. (See *Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 20 Cal.App.3d 668, 671-672.) The RE-1 form expressly referred to the rules and regulations and constitution of the exchange, and contained an express representation by plaintiff

to abide by them. At the time the RE-1 form was executed by plaintiff a rule of the exchange (Rule 347(b)) provided for arbitration between members and their employees arising out of the termination of the employment relationship. (2 CCH New York Stock Exchange Guide, par. 2347b.) Moreover, the RE-1 form which plaintiff admitted executing set forth in its entirety the arbitration clause 30j. Plaintiff's express representation to abide by the exchange rules charged him with the duty of knowing what the rules are. See *Gear* v. *Webster* (1968) 258 Cal.App.2d 57 [65 Cal.Rptr. 255], where the appellant became a member of an association of realtors whose bylaws required submission to arbitration of controversies between members. "[B]y agreeing to abide by the bylaws, appellant was bound to arbitrate her dispute with another member, here, respondent." (258 Cal. App.2d at p. 61.)

In *Larrus* v. *First National Bank* (1954) 122 Cal.App.2d 884 [266 P.2d 143], the plaintiffs opened a bank account and signed signature cards containing a printed statement that they agreed to be governed by the bylaws of the bank. Their attention was not called to the clause in dispute nor were they advised of the bank's rules. The court held the agreement binding. A reasonable person seeking employment in an industry as highly regulated as the securities exchange with knowledge of a registration requirement cannot escape the binding effect of arbitration rules referred to and expressly set forth in the RE-1 form, which he has signed, by claiming lack of knowledge of the rules integrated into the form.

The RE-1 form is a contractual agreement, even though it is headed "Application." In the application plaintiff stated "I have read the Constitution and Rules of the Board of Governors of the New York Stock Exchange and, if approved, I hereby pledge myself to abide by the Constitution and Rules of the Board of Governors . . . as the same have been or shall be from time to time amended, and by all the rules and regulations adopted pursuant to the Constitution and by all practices of the Exchange."

The approval and registration by Merrill Lynch made the application a contract between the parties.

In *Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 20 Cal. App.3d 668, the identical situation arose as in this case. Frame was a former employee of Merrill Lynch who voluntarily left their employment and entered competitive employment. As did plaintiff here, he filed an action to have the forfeiture provision of his application for employment declared void. The defendant petitioned for an order requiring arbitration of all issues. The petition was denied by the trial court, which action the reviewing court held erroneous. Involved was the indentical form of application

for employment involved in this action. There, as does plaintiff here, Frame although he admitted signing the application contended that there was no binding agreement between him and Merrill Lynch for arbitration because there was no mutual assent to the arbitration provision as he was unaware of the clause because he did not read it. To this contention the reviewing court answered: "But failure to read a contract before signing is not in itself a reason to refuse its enforcement. (*Oakland Bank of Commerce* v. *Washington* (1970) 6 Cal.App.3d 793, 800 [86 Cal.Rptr. 276].)" (*Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra*, at p. 671; *Federico* v. *Frick* (1970) 3 Cal.App.3d 872, 875 [84 Cal.Rptr. 74].)

Just as plaintiff does here, Frame contended that Merrill Lynch was not a party to the agreement. The court said: "Respondent claims that appellant cannot enforce the agreement to arbitrate because appellant was not a party to it. The arbitration agreement was indeed contained not in a contract form but in a New York Stock Exchange form, entitled 'APPLICATION FOR APPROVAL OF EMPLOYMENT OF REGISTERED REPRESENTATIVE.' But the form was an indispensable part of the arrangements by which respondent was employed by appellant. The subject matter of the 'application' was the approval of respondent's employment by appellant, the form was witnessed by an officer of appellant, and investigation and substantiation of the fact assertions in the application were entrusted to appellant. The application was part of the larger transaction by which appellant and respondent entered into a continuing employment relationship. Therefore, the arbitration provision is not unenforceable because of lack of mutuality." (*Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra*, at pp. 671-672.)

## 2. *The legality of the forfeiture clause.*

Frame made the same contention in his case as does plaintiff here, concerning clause 11.1: "The profit-sharing plan under which respondent claims benefits contains a provision that an employee who voluntarily terminates his employment and works for a competitor forfeits his rights to benefits under the plan. Respondent contends that the forfeiture provision is unlawful as being in restraint of trade under Business and Professions Code section 16600. In *Muggill* v. *Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242 [42 Cal.Rptr. 107, 398 P.2d 147], the court held invalid under section 16600 a closely analogous provision. In *Muggill* a retired employee went to work for a competitor of his former employer; retirement fund benefits were terminated under a clause similar to the one here in question. We are persuaded that, under *Muggill*, the forfeiture provision is ineffective under California law.

"Business and Professions Code section 16600 explicitly declares that 'every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.' The California Supreme Court in *Muggill* v. *Reuben H. Donnelley Corp., supra,* 62 Cal.2d 239, at page 242, has on closely similar facts held a forfeiture provision to be invalid. We conclude from the California Supreme Court's treatment of the problem that section 16600 does represent a 'strong public policy' of this state." (*Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 20 Cal.App.3d at pp. 672, 673.) Thus, it is clear that the forfeiture clause is invalid and cannot be enforced here.

### 3. *Labor Code section 229.*

■ Defendant contends that plaintiff's argument regarding Labor Code section 229 was not presented to the trial court and is newly raised on appeal. Therefore it should not be considered. If considered, defendant submits that it was reversible error by the trial court in failing to prepare mandatory findings of fact and conclusions of law.

Defendant's contention that the effect of Labor Code section 229 cannot be considered on appeal is without merit. ■ A legal theory to sustain a judgment may be considered on appeal even though it was not raised in the trial court, as long as it does not raise factual issues not presented to the trial court. (*Allstate Ins. Co.* v. *Orlando, supra,* 262 Cal.App.2d 858, 867.) ■ Facts sufficient to sustain such theory under Labor Code section 229 were presented to the trial court. Therefore, Labor Code section 229 should be considered in determining the correctness of the trial court's order.

■ The *Frame* court did not consider the effect of section 229 of the Labor Code on the arbitration agreement. This section provides that "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained *without regard to the existence of any private agreement to arbitrate.*" (Italics added.) Wages are defined in section 200 of the Labor Code as including "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

No cases have construed section 229 of the Labor Code, but the intent appears quite clear. While the strong public policy of the state favors arbitration (*Federico* v. *Frick, supra,* 3 Cal.App.3d 872, 875), the intent of the statute is to provide in the first instance a judicial forum where there exists a dispute as to wages. Since the intent is clear, the only determination

which must be made is whether the profit sharing benefits constitute wages within Labor Code section 200, *supra*. ■ "[P]ursuant to the present day concept of employer-employee relations, the term 'wages' should be deemed to include not only the periodic monetary earnings of the employee but also the other benefits to which he is entitled as a part of his compensation. [Citations.]" (*Wise* v. *Southern Pac. Co.* (1970) 1 Cal.3d 600, 607 [83 Cal.Rptr. 202, 463 P.2d 426].) A bonus, offered as an incentive to attract employees, has been held to be wages. (*Hunter* v. *Ryan* (1930) 109 Cal.App. 736, 738 [293 P. 825].) Payments to a health and welfare fund by an employer (*People* v. *Alves* (1957) 155 Cal.App.2d Supp. 870, 872 [320 P.2d 623]), payment of insurance premiums by an employer (*Foremost Dairies* v. *Industrial Acc. Com.* (1965) 237 Cal. App.2d 560, 580 [47 Cal.Rptr. 173]), payments to an unemployment insurance fund (*People* v. *Dennis* (1967) 253 Cal.App.2d Supp. 1075, 1077 [60 Cal.Rptr. 925]), and pension plan benefits (*Hunter* v. *Sparling* (1948) 87 Cal.App.2d 711, 725 [197 P.2d 807]) are wages within the meaning of the statute. In its legal sense, the word "wage" has been given a broad, general definition so as to include compensation for services rendered without regard to the manner in which such compensation is computed. (*Estate of Hollingsworth* (1940) 37 Cal.App.2d 432, 436 [99 P.2d 599].)

■ In the profit sharing plan in question, it is stated that such employee benefits, a voluntary sharing by Merrill Lynch, etc. of its profits with its employees, is intended not only to reward the employees, but also to provide a nest egg for the future. All contributions to the plan are made by the employer. The employee's share is determined by the ratio that his compensation bears to the compensation of all eligible employees.

The profit sharing plan is clearly an inducement to employees by a plan through which they benefit financially in proportion to their compensation. Consequently, defendant's contributions to the plan should be considered wages within the meaning of Labor Code sections 200 and 229. Therefore, section 229 must apply to plaintiff's claim, giving him the right to bring his claim in court in spite of any agreement to arbitrate.

"Profit sharing ordinarily signifies the participation of employees with their employer in a given share of the profits of an enterprise by reason of their labor . . . ." (*Durkee* v. *Welch* (S.D.Cal. 1931) 49 F.2d 339, 341.)

Section 229 of the Labor Code was adopted in 1959 (Stats. 1959, ch. 1939, § 1, p. 4532). The California Arbitration Act was revised in 1961 (Stats. 1961, ch. 461, § 2, p. 1540 [now included in Code Civ. Proc.,

§§ 1280-1294.2]). The fact that the Legislature has not seen fit to amend or repeal section 229 in the approximately 11 years since the revision of the Arbitration Act precludes any claim that section 229 is no longer in effect.

There is nothing in the Arbitration Act to indicate that the public policy inherent in section 229, namely that an employee cannot be required to arbitrate a claim for wages, which arbitration might not take place in California, has changed in any respect.

We hold that the forfeiture provision of the agreement is illegal and that arbitration will not lie. It therefore becomes unnecessary to consider the other contentions of the parties.

The only issue before us on this appeal is the validity of the trial court's order denying respondent's petition for arbitration. Any other issues under the pleadings may of course be considered by the trial court.

It should be pointed out that the order making this a class action limits the plaintiffs to plaintiff Ware, the five persons designated as additional plaintiffs, and residents of California who voluntarily left the employ of Merrill Lynch and entered into employment with competitive firms and who were not paid profit sharing units by reason of Article 11.1.

Order affirmed.

Devine, P. J., and Rattigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 10, 1972.