**Kenneth BOYER, Plaintiff,**

**v.**

**PIPER, JAFFRAY & HOPWOOD, INC., et al., Defendants.**

**Paul BLY, Plaintiff,**

**v.**

**PIPER, JAFFRAY & HOPWOOD, INC., et al., Defendants.**

**Civ. Nos. 74–4002, 74–4003.**

United States District Court,
D. South Dakota, S. D.

March 18, 1975.

John E. Burke of May, Johnson & Burke, Sioux Falls, S. D., for plaintiffs.

F. M. Smith of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., and Thomas W. Tinkham of Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., for defendants.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This memorandum constitutes the court's decision on plaintiffs' motions for summary judgment. No relevant factual disputes are before the court. Briefs having been submitted and oral argument having been waived, the court's decision follows.

## FACTUAL BACKGROUND

This is a diversity case. Plaintiffs were employed by Piper, Jaffray & Hopwood, Inc. (hereinafter Piper), and participated during their period of employment in an employees profit sharing plan. The profit sharing plan contained a provision saying, in essence, that if a participant terminated his employment with Piper prior to reaching the age of 60 years *and* accepted employment within one year with a competitor in a city in which Piper had an office, he forfeited the amount in which he had a vested interest under the plan.

Plaintiffs left their positions with Piper in Sioux Falls, South Dakota, and accepted, within one year, positions with a competitor in the same city. Piper notified plaintiffs of their forfeiture of the amounts vested in them. Plaintiffs initiated this action seeking immediate payment of the amounts vested in them prior to their leaving Piper. They contend, in essence, that the forfeiture provision in the profit sharing plan is unlawful and, therefore, unenforceable, and that defendants are wrongfully retaining property due them.

## WHICH STATE'S LAW IS APPLICABLE?

The profit sharing plan states that the parties thereto agreed that the law of Minnesota would govern its validity and interpretation. Defendants contend, therefore, that the court should apply Minnesota law to all substantive questions involved in this lawsuit.

■ It is this court's view that South Dakota has a greater interest than Minnesota in the determination of the issues in this case,[1] and that the policy in dispute is fundamental in South Dakota. The court, therefore, finds that Minnesota law should be applied only to the extent that the result obtained through application of that law does not violate the public policy of South Dakota. Restatement (Second) of Conflict of Laws, sections 187–188 (1971).

## THE MERITS OF THE LAWSUIT

The provision in dispute reads as follows:

7.3. *Full Forfeiture for Competition.* Notwithstanding any of the foregoing, in the event the employment of a participant with the Company is terminated voluntarily or involuntarily prior to his reaching sixty (60) years of age and within a period of one (1) year after such termination of employment such participant competes or engages in a business partially or wholly competitive with the business of the Company, or is connected directly or indirectly, as an employee or otherwise, with any persons, corporations or organizations which are competitive with the Company, in any of the cities in which the Company shall have had an office immediately prior to such termination of employment, then that portion of his matured benefit which exceeds the amount vested in him on December 27, 1965 shall be deemed never to have vested in him. No such divestment shall occur until written notice of such competition shall have been delivered to the participant and thirty (30) days after such notice has elapsed during which the participant has continued such competiton. The Company shall be the sole judge of whether a participant has engaged in such competition. Upon making such determination, the Company shall direct the Trustees to

retain and forfeit the portion of such participant's matured benefit deemed unvested as aforesaid by causing a writing evidencing such determination to be delivered to the Trustees.

■ For plaintiffs to prevail, they must show, first, that their participation in the profit sharing plan gave them legally enforceable rights. Piper contends that the profit sharing plan was not a part of plaintiffs' employment contract and that, because plaintiffs made no contribution of their own to the plan, the money contributed to their accounts in the plan was contributed as a mere gratuity by Piper.

■ The court, for three reasons, is unpersuaded that the contributions were mere gratuities from Piper to plaintiffs. First, there is persuasive case law authority for the proposition that an employee's interest in a profit sharing plan should be considered wages. Ware v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 24 Cal.App.3d 35, 100 Cal. Rptr. 791, 797–98 (1972). *See also,* Van Hosen v. Bankers Trust Co., 200 N.W. 2d 504 (Iowa 1972). Piper has cited cases holding to the contrary, but it is this court's view that the trend is toward the holdings cited above, and that they reflect the better reasoning.

Secondly, the profit sharing plan was designed to take advantage of the deductions from gross earnings offered by section 404 of the Internal Revenue Code. 26 U.S.C. § 404. A regulation promulgated under section 404 provides that the contributions deducted must be compensation for services rendered. 26 C.F.R. 1.404(a)–1(b). Piper appears to be arguing that for the purpose of this lawsuit its contributions to the profit sharing plan were a mere gratuity, but that for the purpose of compliance with the tax laws the contributions were compensation for services rendered. The court is reluctant to entertain such a contention, and believes that Piper is

1. The agreement was made and was to be performed in South Dakota; furthermore, the plaintiffs are residents of South Dakota and the lawsuits were initiated in South Dakota.

bound on this point by its professed compliance with the tax laws, and that the contributions should be treated as compensation in ruling on the motion before the court.

Thirdly, Piper's informational brochure explaining the profit sharing plan advertises the plan as being an integral part of the overall compensation program. The plan is not presented as a "something for nothing" plan, but rather is presented as an incentive program designed to make Piper competitive in hiring and retaining high quality personnel.

For the above reasons the court finds that the contributions to the profit sharing plan were part of plaintiffs' compensation for services rendered. It follows that the plan gave rise to legally enforceable contractual rights.

Because resolution of the issue of the enforceability of the forfeiture provision depends ultimately on whether it is violative of South Dakota public policy, the court addresses that question first. The South Dakota "public policy" on this issue is expressed in S.D.C.L. 53–9–8 through S.D.C.L. 53–9–11 (1967). Section 53–9–8 provides:

> Every contract restraining exercise of a lawful profession, trade, or business is void to that extent, except as provided by §§ 53–9–9 to 53–9–11, inclusive.

Sections 53–9–9 and 53–9–10 deal with the sale of good will and agreements between partners not to compete upon dissolution of their partnership, respectively, and are not relevant here. Piper contends that section 53–9–11 is relevant. It reads as follows:

> An employee may agree with an employer at the time of employment or at any time during such employment not to engage directly or indirectly in the same business or profession as that of his employer for any period not exceeding ten years from date of such agreement and within any specified territory not exceeding a radius of twenty-five miles from the principal place of business of the employer, as specified in such agreement, but such contracts between employee and employer shall apply only to those engaged in some profession, the practitioners of which must be duly licensed in the state of South Dakota.

■ Piper contends that the forfeiture provision is not governed by the above statutory scheme because it is not part of a contract. For the reasons given above, this court disagrees and finds that the profit sharing plan as a whole gave rise to legally enforceable contractual rights, and that the forfeiture provision is subject to scrutiny under S.D. C.L. 53–9–8.

■ That section prescribes a rule more stringent than the common law on provisions restraining competition. By its terms it explicitly applies to *every* contract restraining exercise of a lawful profession, trade or business. It leaves no room for application of a common law "reasonableness" test.[2] Neither does it require that the contract totally *prevent* exercise of a lawful profession, trade or business. It makes unlawful any such *restraint*.

It is undisputed that plaintiffs were engaged in a lawful business or profession. The next question, then, is whether the forfeiture provision restrains exercise of their business or profession. The California Supreme Court, in applying a statute identical to S.D.C.L. 53–9–8, said: "This section invalidates provisions in employment contracts prohibit-

---

2. The court recognizes that the United States Supreme Court has construed a similar statute, 15 U.S.C. sec. 1, to proscribe only contracts imposing "unreasonable" restraints. Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). The statute before this court, however, is a different statute enacted by a different legislative body. This court is unassisted by legislative history or guidance from the South Dakota Supreme Court on this question, and is reluctant to engage in the judicial legislation that seemingly would be necessary to deviate from the plain meaning of the statutory language and read a "reasonableness" standard into the statute.

ing an employee from working for a competitor after completion of his employment *or imposing a penalty if he does so.*" Muggill v. Reuben H. Donnelley Corp., 62 Cal.2d 239, 42 Cal.Rptr. 107, 398 P.2d 147, 18 A.L.R.3d 1241, 1245 (1965). There can be no doubt that the forfeiture provision in this case imposes a penalty on those employees who accept employment with Piper's competitors. Piper's employees are not so free to accept employment with competitors as they would be absent the provision. Therefore to the extent that forfeiture of the amount of money vested in their accounts in the profit sharing plan would deter them from seeking such employment, they are restrained.

The court concludes that the forfeiture provision is a restraint proscribed by section 53–9–8 unless, of course, it can be categorized as falling within one of the exceptions permitted by that section.

Piper contends that the provision is made lawful by section 53–9–11 set forth above. This court agrees with plaintiffs' contention that 53–9–11 is not applicable in this case. That section deals with "agreements not to compete." There is no such agreement involved here. The agreement here does not *prevent* plaintiffs from competing with Piper; it only places a practical restraint on such competition by making a forefeiture the price of that competition. Such restraints, in this court's view, are proscribed by the statutory scheme. The court concedes that it may seem anomolous to find that certain agreements totally preventing competition are valid while any agreement merely restraining competition is invalid. This, however, appears to be the clear intent of the legislature, and the court will not dictate a result contrary to that intent.

There being no genuine issue of material fact on the question of whether the forfeiture provision is unenforceable, the court finds that it is unenforceable under South Dakota law and that Piper is liable to each plaintiff for the amount duly vested in him at the time of his termination with Piper.

Finally, the court reserves its ruling on whether the payment to plaintiffs must be immediate.

The court hereby and under Rule 56(d) of the Federal Rules of Civil Procedure grants partial summary judgment to plaintiffs on the issue of liability. The above constitutes the court's findings of fact and conclusions of law.

Done and entered at Sioux Falls, South Dakota, this 18th day of March, 1975.