INTERNATIONAL BUSINESS MACHINES CORPORATION, Plaintiff–Appellant,

v.

Dr. Christopher H. BAJOREK, Defendant–Appellee.

Chris Bajorek, Plaintiff–Appellee,

v.

International Business Machines Corporation, Defendant–Appellant.

Nos. 97–16424, 97–16438.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1998

Filed Sept. 14, 1999

Peter T. Barbur, Cravath, Swaine & Moore, New York, New York, for the plaintiff-appellant and defendant-appellant.

Thomas M. Peterson, Brobeck, Phleger & Harrison, San Francisco, California, for the defendant-appellee and plaintiff-appellee.

Jesse M. Brill (briefed), National Association of Stock Plan Professionals, Concord, California, for the amicus.

Before: WALLACE, T. G. NELSON, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

This case primarily involves choice of law questions.

## FACTS

IBM issued stock options to its executive employee, Dr. Bajorek, that were worth more than $900,000 when he exercised them. His option agreements included a promise that if he worked for a competitor within six months after he exercised his options, he would return any profits from the stock options. He left, and immediately went to work for a competitor. IBM therefore notified him that his stock options were cancelled.

Dr. Bajorek sued IBM in California for a declaratory judgment that he was in compliance with his agreements and that IBM was not entitled to cancel his stock options. IBM sued Dr. Bajorek in New York for breach of contract, on the theory that he broke his promise not to go to work for a competitor for six months. IBM's complaint also alleged fraudulent misrepresentation, on the theory that when Dr. Bajorek certified upon exercise of his stock options that he was in compliance, he knew full well that he did not intend to comply. Each case was filed in state court and removed to federal court. The stock option agreements said that disputes were to be resolved according to the law of New York. The New York case was transferred to California and consolidated with the California case.

The district court granted judgment on the pleadings for Bajorek. It addressed Bajorek's declaratory judgment action first and dismissed IBM's damages suit. The district court did not apply New York law, despite the parties' agreement to do so. Its theory was that application of New York law would violate strong California policies against restraining people from engaging in their lawful trade, and against employers collecting from employees wages they had already paid them. Those doctrines of California law, as the district court viewed them, made unenforceable the provision of the stock options requiring reimbursement if Dr. Bajorek went to work for a competitor within six months.

Because Dr. Bajorek prevailed on the pleadings, we determine whether, if IBM could prove what it pleaded, it would be entitled to relief. Thus the facts are stated as IBM pleaded them, and have not yet been proved.

Bajorek is a resident of California. IBM is a New York corporation with its principal place of business in New York. Bajorek worked for IBM for 25 years, mostly in California, but also for a few years in Minnesota and New York. IBM periodically issued various incentives in the nature of stock options to selected employees, including Bajorek, to induce them to remain with IBM. Dr. Bajorek's stock option agreements provided that, upon exercise, he would certify that he was in compliance with a cancellation clause, which prohibited him from working for a competitor, and that if he violated that clause during the six months after exercise, then he had to pay back to IBM his gains and payments from exercise of the options. Most importantly for this case, the stock options provided that the plan and all determinations made pursuant to it would be governed by the law of New York. Dr. Bajorek exercised his stock options, but went to work part-time for a competitor during his last week at IBM. He then went to work full time with the competitor as a senior executive immediately upon leaving IBM. IBM notified him that it was rescinding his stock options and demanded the money due upon cancellation, but Dr. Bajorek refused to pay it.

Dr. Bajorek made $928,538.74 from exercise of the stock options. IBM argues that he took almost a million dollars for not working for a competitor, yet did just that, so he has to pay the money back. Dr. Bajorek argues that under California law, an employer cannot take back the money it pays to employees, and cannot restrict an employee from going to work for a competitor, so he was not bound by these parts of the agreement. New York law does not have provisions like these. Thus the question is whether Dr. Bajorek is bound by his agreement to application of the law of New York.

## ANALYSIS

We review judgment on the pleadings *de novo*.[1] We review a district court's decision on enforcement of a choice of law provision for abuse of discretion, except as to purely legal questions, which we review *de novo*.[2]

### I. Which state's choice of law rules?

IBM argues that because the substantive lawsuit was filed in New York, the court should have used New York choice of law principles, despite the case having been transferred to California. Generally where a defendant in a diversity case obtains a transfer, "the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue."[3] This rule prevents a party who removed a diversity case from obtaining a different result in federal court, because of a transfer, than it

1. *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir.1996); *Cohen v. Stratosphere Corp.*, 115 F.3d 695, 700 (9th Cir.1997).

2. *Richards v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir.1998)(en banc); *cf. Spar-*ling v. Hoffman Constr. Co., Inc., 864 F.2d 635, 641 (9th Cir.1988).

3. *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

would have obtained in state court.[4] There should not be "a change of law as a bonus for a change of venue."[5] We have previously held that in a transferred case, the choice of law rules of the transferor state apply.[6]

■ The rule that in a transferred case, the transferor state's choice of law rules apply, means that New York choice of law principles apply to the New York case. IBM filed its breach of contract and fraud case in New York, and the transfer to California does not displace the choice of law rules of the original forum, New York, for that case. Because Bajorek filed his declaratory judgment action in California, in the absence of other considerations California choice of law rules would apply to the declaratory judgment action.

In this case, we need not decide whether the district court abused its discretion[7] by dismissing the New York case and proceeding on the California case. If it made a difference which case was dismissed, the difference would be in the choice between New York and California law. As we explain below, both parties have argued the case on the basis of Restatement (Second) Conflict of Laws section 187. IBM has argued that this is the choice of law rule followed for cases such as this by New York, and Bajorek that it is the California rule. Thus we need not resolve the question, on which the Seventh Circuit and Federal Circuit disagree, whether a district court must exercise its discretion to dismiss a declaratory judgment action, even though earlier filed, where the substantive action anticipated by the declaratory judgment action is pending.[8] Though

the parties disagree on whether to apply California or New York choice of law principles, the briefs set out no difference between them, so we need not decide, and can proceed to application of the principles in Restatement (Second) Conflict of Laws section 187.

## II. Restatement (Second) Conflict of Laws § 187.

Though we are persuaded by IBM's argument that New York choice of law principles apply, IBM's brief does not tell us much about what they are. It says, citing an intermediate New York appellate court decision, that New York applies section 187 of the Restatement (Second) Conflict of Laws.[9] Bajorek also says that New York applies this Restatement provision. There are indications that New York may have a stronger policy of enforcing contractual choice of law provisions than that Restatement section,[10] but because IBM argues only that the district court erred in its application of section 187, subsection 2, of the Restatement, that is the only argument we analyze.

The Restatement provision relied upon says that a contractual choice of law provision controls unless the chosen state has no substantial relationship and no reasonable basis for application, or application of the chosen state's law would violate a fundamental policy of a state with a materially great interest, the law of which would apply in the absence of the choice of law provision:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the

4. *Id.* at 638, 84 S.Ct. 805.

5. *Id.* at 636 n. 33, 84 S.Ct. 805.

6. *Sparling,* 864 F.2d at 641.

7. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 290, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

8. *Cf. Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 749 (7th Cir.1987); *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993).

9. *Marine Midland Bank v. United Missouri Bank,* 223 A.D.2d 119, 643 N.Y.S.2d 528, 531 (App.Div.1996).

10. *See* N.Y. Gen. Oblig. Law § 5–1401(1); *see also Philips Credit Corp. v. Regent Health Group, Inc.,* 953 F.Supp. 482, 502 (S.D.N.Y. 1997); *see also Bank of America National Trust and Savings Assn. v. Envases Venezolanos, S.A.,* 740 F.Supp. 260, 264 (S.D.N.Y. 1990).

particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 [Law Governing in Absence of Effective Choice by the Parties], would be the state of the applicable law in the absence of an effective choice of law by the parties.[11]

■ New York has a substantial relationship to the transaction and to the parties. IBM has its headquarters there. Bajorek chose to work for IBM. He voluntarily entered into contracts with IBM. The parties have a reasonable basis for choosing New York law, because IBM stock is nationally traded on the New York Stock Exchange, and this corporation headquartered in New York has an interest in having all its stock option agreements with employees in different places construed according to the same law. Bajorek argues that this creates two classes of Californians, those who work for California companies and those who work for out of state companies. But his argument would create two classes of IBM employees, those who live in California and those who live elsewhere. His classification argument does not demonstrate any unfairness or arbitrariness to a classification that binds employees of non-California firms to the agreements the employees sign, nor does it address the factors stated in the Restatement, which Bajorek concedes is

applicable, whether New York has a substantial relationship or could be reasonably chosen by the parties. Bajorek therefore cannot avoid his contractual choice of law provision under subsection 2(a) of the Restatement. We agree with the district judge that New York has a substantial relationship to the parties for purposes of subsection 2(a).

■■ Subsection 2(b) of the Restatement provision enables a party to avoid his agreement to apply a particular state's law if he can show these things: (1) application of the law of the chosen state violates a policy of a state, (2) the policy is fundamental, (3) the state with the contrary policy has a materially greater interest than the chosen state in the determination of the particular issue, and (4) the state with the contrary policy would be the state of the applicable law under section 188 were it not for the choice of law provision. Section 188 provides for choice of law in the absence of a contractual provision specifying which law applies. Because California also follows section 187 of the Restatement,[12] the district judge analyzed the choice of law issue under section 187.

The district court accepted Bajorek's argument that application of New York law would be contrary to two fundamental public policies of California established by California Labor Code § 221, prohibiting recoupment of wages paid to employees, and California Business and Professional Code § 16600, limiting anti-competition agreements.

### A. California Labor Code § 221.

■ California Labor Code § 221 makes it unlawful "for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."[13] Bajorek's theory is that if IBM were permitted to recover damages for breach of contract on his

---

**11.** Restatement (Second) Conflict of Laws § 187(2) (1971).

**12.** *See Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, 1151 (Cal.1992).

**13.** Cal. Lab.Code § 221 (West 1989).

stock option agreements, it would be violating this statute. Because the question is purely one of law, our review is *de novo*.[14]

This statute was enacted in 1937 in response to "secret deductions or 'kickbacks' to make it appear that an employer paid the wage provided by a collective bargaining contract or by a statute, although in fact he paid less...."[15] A further purpose was to protect "the reliance of the employee on receiving his expected wage" against "unanticipated or undetermined deductions."[16]

The statute does not apply because its words read literally and in light of its purposes do not apply—stock options are not "wages." Wages are defined by the statute as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."[17] Stock options are not "amounts." They are not money at all. They are contractual rights to buy shares of stock. The purposes of avoiding secret kickbacks enabling an employer to avoid minimum wage laws or collective bargaining agreement obligations, and of protecting employees' reliance interests in their expected wages, do not apply to stock options.

The amount of money for which the shares can be sold on the market varies unpredictably from time to time, so it is not "fixed or ascertainable" by any method of calculation when the agreements are made or exercised. Even where stock options may be awarded pursuant to plans giving rise to expectations of stock awards, and are not awarded according to such plans, they ordinarily do not give rise to an expectation of a calculable sum of money.[18] The value of the stock awarded in options may be as much affected by the fortuities of stock market behavior as by the profitability of the company. The stock option agreements in this case entitled Dr. Bajorek to purchase IBM stock, on the exercise date of his choosing, for its fair market value as of the date the option was awarded.[19] Thus, unlike wages, the value that Dr. Bajorek obtained from them depended largely on the vagaries of stock market valuations on those dates. Bajorek argues that we should analogize stock options to profit sharing plans, which have been treated for some purposes as wages.[20] The analogy fails, because profit sharing is ordinarily an ascertainable amount award-

**14.** *See State Farm Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415, 1418 (9th Cir.1991).

**15.** *Kerr's Catering Service v. Department of Indus. Relations*, 57 Cal.2d 319, 19 Cal.Rptr. 492, 369 P.2d 20, 25–26 (Cal.1962).

**16.** *Id.* at 26.

**17.** Cal. Lab.Code § 200 (West 1989).

**18.** *Cf. Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1080 (7th Cir.1986).

**19.** Dr. Bajorek was granted Incentive Stock Options, Nonstatutory Stock Options, Stock Appreciation Rights, and Performance Stock Units at a variety of prices and at various times. The following exercises, totaling $928,538.74, are at issue here:
(a) February 12, 1996
(1) 865 Incentive stock options receiving ordinary income of $53,145.60;
(2) 4,408 Nonstatutory Stock Options realizing $295,336.00;

(3) 3,055 Stock Appreciation Rights realizing $209,481.35.
(b) April 25, 1996
(1) 669 Incentive Stock Options realizing $22,030.17;
(2) 1,915 Nonstatutory Stock Options granted on February 8, 1995 realizing $63,060.95;
(3) 2,135 Nonstatutory Stock Options granted on February 7, 1994 realizing $115,546.20;
(4) 2,204 Nonstatutory Stock Options granted on April 23, 1993 realizing $131,-534.72;
(5) 627 Nonstatutory Stock Options granted on January 8, 1993 realizing $38,403.75.

**20.** *See Ware v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 24 Cal.App.3d 35, 100 Cal.Rptr. 791 (Cal.Ct.App.1972), *aff'd on other grounds*, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973).

ed pursuant to a formula for past labor, but stock options, as explained above, are not an "amount" at all.

Because the stock options were not "wages" under the statute, the statute could not properly be treated as a "fundamental policy" of California under Restatement section 187, weighing against the parties' choice of New York law.

### B. California Business and Professions Code § 16600.

■ The other California policy at issue is its statute providing that "... every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."[21] Bajorek argues that, by conditioning his stock options on his not working for a competitor, IBM violated this California policy.

The stock option plan provides that "a Participant shall not render services for any organization or engage directly or indirectly in any business ... competitive with the Company...." Failure to comply with this restriction "during the six months after any exercise, payment or delivery pursuant to an Award shall cause such exercise, payment or delivery to be rescinded." This language prohibited Bajorek from exercising his stock options and then going to work for an IBM competitor within six months. He did what was pro-

hibited, so under the plan his exercise of his options was to be rescinded.

The pleadings establish an issue as to whether the firm Bajorek went to work for was or was not a competitor. Thus for purposes of judgment on the pleadings, it must be assumed that it was a competitor. We have not found precedent construing the California statute in a factual context similar to the one in the case at bar. In other factual contexts, some broad and some restrictive interpretations of the language have been made.[22] We are bound by our own earlier decisions construing section 16600.[23]

■ We held in *Campbell v. Board of Trustees* that section 16600 "did not make all restrictions unenforceable."[24] Although the California statute does not except "reasonable" restraints of trade, it "only makes illegal those restraints which preclude one from engaging in a lawful profession, trade, or business."[25] Thus a contract is valid, despite a restriction on competition, if the promissor is "barred from pursuing only a small or limited part of the business, trade or profession...."[26] We expanded upon this interpretation in *General Commercial Packaging, Inc. v. TPS Package Engineering, Inc.*[27] In *General Commercial Packaging*, we noted that *Campbell* "required the plaintiff to prove that the contract 'completely restrained' him from pursuing his profession."[28]

---

**21.** Cal. Bus. & Prof.Code § 16600.

**22.** *Compare Kolling v. Dow Jones & Co., Inc.,* 137 Cal.App.3d 709, 187 Cal.Rptr. 797, 809–10 (Cal.Ct.App.1982) (territorial restrictions are tested by "rule of reason"), *and Boughton v. Socony Mobil Oil Co.,* 231 Cal.App.2d 188, 41 Cal.Rptr. 714, 716 (Cal.Ct.App.1964) (covenant will be upheld if bars person from pursuing only a small or limited part of a business, trade or profession), *with Metro Traffic Control, Inc. v. Shadow Traffic Network,* 22 Cal.App.4th 853, 27 Cal.Rptr.2d 573, 576–77 (Cal.Ct.App.1994) (covenant not to do traffic reporting for other television or radio stations for one year is unenforceable as a severe restriction on employees' mobility and betterment), *and Scott v. Snelling and Snelling, Inc.,* 732 F.Supp. 1034, 1042–43 (N.D.Cal.1990) (California does not follow "rule of reason" in

interpreting covenants restraining competition).

**23.** *See FDIC v. McSweeney,* 976 F.2d 532, 535 (9th Cir.1992).

**24.** *Campbell v. Board of Trustees,* 817 F.2d 499, 502 (9th Cir.1987).

**25.** *Id.*

**26.** *Id.* (quoting *Boughton v. Socony Mobil Oil Co.,* 231 Cal.App.2d 188, 41 Cal.Rptr. 714, 716 (Cal.Ct.App.1964)).

**27.** *General Commercial Packaging, Inc. v. TPS Package Eng'g, Inc.,* 126 F.3d 1131 (9th Cir. 1997) (per curiam).

**28.** *Id.* at 1133.

Bajorek is in no stronger position than the unsuccessful parties in *Campbell* and *General Commercial Packaging*. He claims that IBM sought to prevent him from going to work within six months for Komag. If so, that would exclude him from one small corner of the market but would not preclude him from engaging in his profession, trade or business. The covenant not to compete is limited to six months and to competitors. Bajorek pleads that the covenant not to compete violates section 16600, but IBM denies that allegation, so his conclusory allegation cannot establish a violation for purposes of the issue before us.

Bajorek argues that *Muggill v. Reuben H. Donnelley Corp.*,[29] a 1965 California Supreme Court decision, establishes that IBM's covenant not to compete violates California public policy as established by section 16600. *Muggill* holds that a retirement plan was invalid that made an employee's pension forfeitable if the retired employee "at any time enters any occupation or does any act" in competition with the firm from which he retired.[30] We interpreted the California cases in *Smith v. CMTA–IAM Pension Trust*,[31] where we held that suspension of retirement benefits during any month when the retired employee worked in the same industry or for an employer participating in the same collective bargaining agreement did *not* violate section 16600. In *Smith*, we distinguished *Muggill* "because the employees' loss of rights were absolute and the employers' motive ... was to limit business competition," while in *Smith*, the restraint was "limited in nature and furthers sound public policies."[32]

The case at bar is controlled by *Campbell*, *General Commercial Packaging*, and *Smith*. We are not free to read California law without deferring to our own precedent on how to construe it.[33] IBM's restriction was much more limited than the restriction in *Muggill* or even *Smith*. Bajorek could have kept the money and gone to work for a competitor immediately upon quitting, had he elected to exercise his stock options six months before he quit. And he was free to work in his profession and in the same industry and keep the money, so long as he did not work for a competitor. And he could work for a competitor if he gave up what was paid in part for his promise not to.

It is one thing to tell a man that if he wants his pension, he cannot ever work in his trade again, as in *Muggill*, and quite another to tell him that if he wants a million dollars from his stock options, he has to refrain from going to work for a competitor for six months. Because of the limited scope of the restriction, we are bound to hold, under *Campbell*, *General Commercial Packaging*, and *Smith*, that the covenant did not violate section 16600.

## C.  New York law controls

The parties chose New York law in their contract, and New York has a substantial relationship to the parties and transaction. That means that New York law applies under Restatement section 187 unless, (1) in the absence of a choice of law clause California law would apply, (2) application of New York law "would be contrary to a fundamental policy" of California, and (3) California "has a materially greater interest" than New York. Like so much of the Second Restatement of Conflicts, the mul-

**29.**  *Muggill v. Reuben H. Donnelley Corp.*, 62 Cal.2d 239, 42 Cal.Rptr. 107, 398 P.2d 147 (Cal.1965); *see also Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 24 Cal.App.3d 35, 100 Cal.Rptr. 791 (Cal.Ct.App.1972); *see also Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal.App.3d 668, 97 Cal.Rptr. 811 (Cal.Ct.App.1971).

**30.**  *Muggill*, 42 Cal.Rptr. 107, 398 P.2d at 147 n. 1.

**31.**  *Smith v. CMTA–IAM Pension Trust*, 654 F.2d 650 (9th Cir.1981).

**32.**  *Id.* at 660.

**33.**  *See FDIC v. McSweeney*, 976 F.2d 532, 535 (9th Cir.1992).

ti-factor test is highly indeterminate in application, both because of the number of factors to be considered, and because of the indeterminacy of each of them. For example, in this case, California has a considerable interest in protecting its citizens from oppressive contracts imposed by employers. New York has a considerable interest in providing coherent, predictable uniform law governing exchange of stock by corporations headquartered there and trading stock on its great exchange. Which interest is "materially greater?" We need not answer that question in this case, because Bajorek has failed to establish applicability of the "contrary to a fundamental public policy" element of section 187. Both the California policies he invokes from California Labor Code section 221 and California Business and Professions Code section 16600 are inapplicable. Thus the district court was required to honor the choice of law the parties made in their contract.

III. The fraud claim.

■■■ The district court dismissed IBM's fraud claim on the pleadings. Thus the question is whether IBM could prove facts that would entitle it to relief under New York law for fraud.[34] We review this question *de novo*.[35]

IBM pleaded that by signing his stock option form, Bajorek "implicitly made a material false representation to IBM that he would comply with the terms," and knew at that time that he would go to work for a competitor within six months in violation of the terms. He knew when he signed the forms that IBM would reasonably rely on his signature to sell him the stock, and that, had he disclosed the truth, that he knew he was going to violate the terms, IBM would not have sold him the stock pursuant to the option agreements.

The forms for exercising the stock option agreements said "I certify that I am in compliance with all terms and conditions ... including the rescission, conflict of interest, no compete, confidentiality and patent provisions." IBM did not plead that at the moment of exercise Bajorek was already working for a competitor, but only that he knew then that within six months he would do so, in violation of the agreement, and that he planned not to pay back the money he made from exercising the stock options.

Because the implied misrepresentation was of an intention, rather than a present fact, IBM's pleadings raise a question of whether signing the certification to collect the benefits of the stock option agreements, while intending to break the promises given in exchange for the stock, would constitute fraud under New York law.

■■■ New York's highest court has considered the question, "is a cause of action for fraud stated by alleging that a promisor, at the time of making certain representations, lacked any intention to perform them."[36] Its answer was unequivocal. "A false statement of intention is sufficient to support an action for fraud, even where that statement relates to an agreement between the parties."[37]

IBM may be able to establish facts under its pleading that would amount to fraud under New York law. It is possible that the use of the present tense in the exercise form, "I *am* in compliance ..." may obviate any falsehood on the theory that when he signed the form, Bajorek still was in compliance. But IBM pleads that Bajorek "implicitly made a material false representation to IBM that he *would* comply." The exercise form also said that "I understand that failure to be in compliance

**34.** *See Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir.1998) ("[A] complaint should not be dismissed unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

**35.** *Id.*

**36.** *Graubard Mollen Dannett & Horowitz v. Moskovitz,* 86 N.Y.2d 112, 629 N.Y.S.2d 1009, 653 N.E.2d 1179, 1182 (N.Y.1995).

**37.** *Id.* at 1184.

will subject my profit ... to be forfeited and repaid to IBM to the extent permitted by law and I agree to do so within ten days of notification." IBM's theory is that Bajorek, by signing with a present intention of not paying back the money, made a false statement of intention.

The fraud claim survives the motion for judgment on the pleadings. We do not intimate any view on whether, as the facts may be developed on summary judgment or at trial, Bajorek committed any actionable fraud under the law of New York.

Bajorek argues that his representation could not properly be treated as fraudulent, because the covenant he intended to breach was not enforceable under California law, so he did not intend to break any contractual provision that was not void as a matter of law. But the parties have not made us aware of any New York laws like the two California provisions, sections 221 and 16600, that Bajorek claims made his agreement void. As discussed above, the two California statutes do not apply and Bajorek agreed to be bound by New York law. That would include New York law regarding fraud.

## CONCLUSION

We vacate the judgments dismissing IBM's claims and granting judgment on the pleadings in favor of Bajorek. We remand for adjudication under New York law of IBM's complaint for damages for breach of contract (or Bajorek's complaint for a declaratory judgment that he did not breach) and IBM's complaint alleging fraudulent misrepresentation.