**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD GOLDEN,
*Plaintiff-Appellant*,

v.

CALIFORNIA EMERGENCY
PHYSICIANS MEDICAL GROUP; MED
AMERICA; MARK ALDERDICE;
ROBERT BUSCHO,
*Defendants-Appellees.*

No. 16-17354

D.C. No.
4:10-cv-00437-
JSW

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted December 4, 2017
San Francisco, California

Filed July 24, 2018

Before: Milan D. Smith, Jr., and Sandra S. Ikuta, Circuit
Judges, and John D. Bates,* Senior District Judge.

Opinion by Judge Bates;
Dissent by Judge Milan D. Smith, Jr.

---

* The Honorable John D. Bates, Senior District Judge for the United
States District Court for the District of Columbia, sitting by designation.

## SUMMARY[**]

# Settlement

The panel reversed the district court's order directing the plaintiff to sign a settlement agreement in an employment discrimination suit.

The panel held that the settlement agreement, between a doctor and his former employer, ran afoul of California law because a provision of the agreement placed a "restraint of a substantial character" on the doctor's medical practice. The panel remanded the case for further proceedings.

Dissenting, Judge M. Smith wrote that the settlement agreement did not violate Cal. Prof. & Bus. Code § 16600, and the district court did not abuse its discretion in granting defendants' motion to enforce the agreement.

## COUNSEL

Matthew Borden (argued) and J. Noah Hagey, Braunhagey & Borden LLP, San Francisco, California, for Plaintiff-Appellant.

Sarah E. Robertson (argued), Jonathan McNeil Wong, and Mark A. Delgado, Donahue Fitzgerald LLP, Oakland, California, for Defendants-Appellees.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

BATES, Senior District Judge:

We are now called on to answer the question that we left open when this case was last before us: whether a provision of a settlement agreement between Dr. Donald Golden and his former employer, the California Emergency Physicians Medical Group ("CEP"), places a "restraint of a substantial character" on Dr. Golden's medical practice. *See Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1093 (9th Cir. 2015) ("*Golden I*"). We conclude that it does, and that it therefore runs afoul of California law. *See* Cal. Bus. & Prof. Code § 16600.

## I

Dr. Golden graduated from medical school in 1995.[1] He later completed a fellowship in geriatrics and a residency in internal medicine, and in 2000 he began working for CEP, a partnership of nearly 2,000 physicians who staff emergency rooms and other medical facilities in California and ten other states. While at CEP, Dr. Golden worked primarily as an emergency room physician, although he also worked part-time in several other facilities, including two family practice clinics and two occupational medicine clinics.

---

[1] The following facts are summarized, for the most part, in the majority opinion in *Golden I*. *See* 782 F.3d at 1084–85. We include our own summary for convenience, not because we view the facts differently than did the *Golden I* majority.

In 2007, CEP terminated Dr. Golden's employment, ostensibly because he lacked board certification.**[2]**    Dr. Golden sued CEP in Alameda County Superior Court, claiming that he had in fact been fired because of his race. CEP removed Dr. Golden's suit to federal court and, following a settlement conference before a magistrate judge, the parties orally agreed to settle the case.

When the settlement agreement was later reduced to writing, however, Dr. Golden refused to sign it.  He claimed that one of its provisions, Paragraph 7, was contrary to California's statutory prohibition on contracts "by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind."  Cal. Bus. & Prof. Code § 16600.  Paragraph 7 states:

> The parties agree that, except as specified in Paragraphs 7a and b, below, Golden shall not be entitled to work or be reinstated at any CEP-contracted facility or at any facility owned or managed by CEP.  The parties further agree that if CEP contracts to provide services to, or acquires rights in, a facility that is an emergency room as defined and regulated by California law at which Golden is employed or rendering services, CEP has the right to and will terminate Golden from any work in the emergency room without any liability whatsoever.  Similarly, the parties

---

**[2]** Although Dr. Golden is not board certified in emergency medicine or any other specialty, his declaration states that he is eligible for board certification in internal medicine.  But one CEP partner's declaration states that Dr. Golden is "likely not board eligible" because he "has been practicing medicine for well over 15 years" without becoming certified.

agree that if CEP contracts to provide services to, or acquires rights in, a facility at which Golden is employed or rendering services as a hospitalist, CEP has the right to and will terminate Golden from any work as a hospitalist without any liability whatsoever.

Paragraph 7a states that if CEP contracts with or acquires rights in "an urgent care facility that is not an emergency room . . . and Golden is already working at that urgent care facility, Golden may be entitled to continue working at that urgent care facility" so long as he meets certain criteria. Paragraph 7b goes on to state the terms of Dr. Golden's continued employment if the conditions in Paragraph 7a are met.

Following Dr. Golden's refusal to sign the agreement, his attorney withdrew, intervened in the proceedings, and moved to enforce the agreement so that he could collect his fee. The district court granted the motion and ordered Dr. Golden to sign, reasoning that because Paragraph 7 would not prevent Dr. Golden from *competing* with CEP, it was not a restraint on his medical practice, and section 16600 did not apply. Dr. Golden continued to refuse to sign the agreement, however, and he instead took his first appeal to this Court. *See Golden I*, 782 F.3d at 1085.

We reversed the district court's order, holding that the court had misconstrued section 16600. *Id.* at 1092–93. The statute, we explained, applies not only to noncompetition agreements but also to any contractual provision that places a "restraint of a substantial character" on a person's ability to practice a profession, trade, or business. *Id.* at 1092 (quoting *Chamberlain v. Augustine*, 156 P. 479, 480 (Cal. 1916)). Thus, the fact that Paragraph 7 did not prohibit Dr.

Golden from competing with CEP was not dispositive; rather, the question was whether Paragraph 7 substantially restrained Dr. Golden's practice of medicine, particularly in light of CEP's large presence in California. *Id.* at 1089, 1092–93. Because the factual record on that question was not fully developed, however, we remanded to the district court to determine in the first instance whether Paragraph 7 "constitutes a restraint of a substantial character to Dr. Golden's medical practice." *Id.* at 1093.

On remand, the district court again ordered Dr. Golden to sign the settlement agreement, concluding this time that Paragraph 7 was not a restraint of a substantial character. The court also denied Dr. Golden's request for a jury trial and ruled that an evidentiary hearing was unnecessary. Dr. Golden timely filed this appeal, challenging both the district court's order directing him to sign the agreement and its decision not to hold an evidentiary hearing.[3]

## II

We review a district court's order enforcing a settlement agreement for abuse of discretion. *See Golden I*, 782 F.3d at 1089. Like any other contract, however, we review the validity of a settlement agreement *de novo*, and a district court abuses its discretion if it incorrectly determines that a settlement agreement is enforceable. *See id.*; *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1021 (9th Cir. 2016). The district court's interpretation of state contract law is likewise

---

[3] Because we are able to conclude on this record that the settlement agreement was void under section 16600, we do not consider whether the district court abused its discretion in deciding not to hold an evidentiary hearing.

reviewed *de novo*. *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).

CEP contends that the district court's determination that Paragraph 7 did not impose a "restraint of a substantial character" on Dr. Golden's medical practice is a factual finding that we review for clear error. We disagree. We think the question is better framed as a "mixed question[] of law and fact"—one in which "the issue is whether the facts satisfy the statutory standard." *In re Cherrett*, 873 F.3d 1060, 1066 (9th Cir. 2017) (citation omitted). Thus, while we defer to the district court's specific factual findings as to the nature and extent of the parties' respective professional activities, we review *de novo* both the district court's construction of Paragraph 7 and its conclusion that, in light of the facts found, Paragraph 7 withstands scrutiny under section 16600.

## III

Section 16600 of the California Business and Professions Code provides, with certain exceptions not relevant here, that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." In *Golden I*, we concluded that section 16600 extends beyond noncompetition agreements to any "restraint of a substantial character," citing both the statute's sweeping language and the California decisions interpreting that language. *See* 782 F.3d at 1090–92. Similar considerations guide our analysis of what qualifies as a "substantial" restraint under this standard. *See Int'l Bus. Machs. Corp. v. Bajorek*, 191 F.3d 1033, 1041 (9th Cir. 1999) ("We are not free to read California law without deferring to our own precedent on how to construe it.").

## A

We begin, as always, with the statute's text.  *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018). As we noted in *Golden I*, 782 F.3d at 1090, section 16600 speaks in categorical terms: it refers to "*every* contract by which *anyone* is restrained" from practicing a "profession, trade, or business of *any* kind," Cal. Bus. & Prof. Code § 16600 (emphases added).  This language also stands in stark contrast to the statute's handful of narrow exceptions, which pertain mostly to the sale or dissolution of businesses. *See, e.g.*, Cal. Bus. & Prof. Code § 16601 ("Any person who sells the goodwill of a business . . . may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business so sold . . . has been carried on, so long as the buyer . . . carries on a like business therein.").  As we said in *Golden I*, these exceptions demonstrate that the California legislature knew how to describe specific restraints in "considerable detail" and that, had it intended to draw section 16600 more narrowly, it easily could have done so.  782 F.3d at 1090.

We also noted in *Golden I* how broadly California's courts have read section 16600.  *See id.* at 1091–92.  In *Chamberlain v. Augustine*, for example, the California Supreme Court invalidated a provision of a contract for the sale of stock in the Los Angeles Foundry Company, which would have required the seller to pay $5,000 if he worked for or acquired an interest in any other foundry in California, Oregon, or Washington within three years of the date of the sale.  156 P. at 479–80.  Although the provision applied in only three states and allowed the seller "to act as laborer or molder in various foundries," the court nonetheless concluded that it imposed a "restraint of a substantial character" on his metalworking trade, explaining that "[t]he

statute makes no exception in favor of contracts only in partial restraint of trade." *Id.* at 480.

Almost fifty years later, the California Supreme Court applied section 16600 again, this time invalidating a provision of a pension plan that would have required an employee to forfeit his retirement benefits if he started working for one of his employer's competitors after he retired. *See Muggill v. Reuben H. Donnelley Corp.*, 398 P.2d 147, 149 (Cal. 1965). Citing *Chamberlain*, the court explained that section 16600 nullifies any provision that "prohibit[s] an employee from working for a competitor after completion of his employment or impos[es] a penalty if he does so." *Id.* Since the forfeiture provision clearly imposed such a penalty, it was void. *Id.*

More recently, the California Supreme Court struck down a contractual provision that barred an employee from (1) practicing accounting for eighteen months for any client on whose account the employee had worked in the eighteen months prior to the termination of his employment and (2) soliciting any of his former employer's clients for twelve months following his termination. *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 290–292 (Cal. 2008) (citations omitted). As the California court explained:

> [O]ur courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility. The law protects Californians and ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice. It protects the important legal right of persons to engage in businesses and occupations of their choosing.

*Id.* at 291 (citations omitted). Thus, the court noted, California has rejected the common law "rule of reasonableness," which generally permits professional restraints that are reasonable in relation to the legitimate business interests at stake. *See id.* at 290; Restatement (Second) of Contracts § 188 (Am. Law Inst. 1981). The court also specifically rejected an exception for "narrow" restraints that had been recognized in two prior Ninth Circuit cases. *See Edwards*, 189 P.3d at 292–93 (disapproving *Bajorek*, 191 F.3d at 1041, which upheld an agreement whereby an employee would forfeit his stock options if he began working for a competitor within six months of the termination of his employment, and *Gen. Commercial Packaging v. TPS Package Eng'g, Inc.*, 126 F.3d 1131, 1134 (9th Cir. 1997), which upheld a business's agreement not to solicit a small subset of another business's clients). "Section 16600 is unambiguous," the court explained, "and if the Legislature intended the statute to apply only to restraints that were unreasonable or overbroad, it could have included language to that effect." *Id.* at 293. But absent any such language, California's "strong public policy" against professional restraints "should not be diluted by judicial fiat." *Id.* (citation omitted).

Two decisions of California's intermediate appellate courts have probed the outer limits of this broad reading of section 16600. In *City of Oakland v. Hassey*—a case decided before *Edwards*—the California Court of Appeal upheld a provision of a police officer's employment contract that would have required the officer to reimburse his employer $8,000 in training costs if he left his job before five years. 78 Cal. Rptr. 3d 621, 627–28 (Cal. Ct. App. 2008). Because "[n]othing prevented [the officer] from working for another police department, or anywhere else, for that matter," the court held that the agreement was not a restraint

on his profession and that section 16600 did not apply. *Id.* at 634.

In *Golden I*, we noted that the provision at issue in *Hassey* might not have survived under *Edwards*'s later reading of section 16600, since "a requirement to reimburse training expenses could impose a meaningful obstacle to 'employee mobility,' and, hence, limit the opportunities one may have to engage in one's chosen line of work." 782 F.3d at 1092 (citation omitted). But the California Court of Appeal later rejected our suggestion. *See USS-POSCO Indus. v. Case*, 197 Cal. Rptr. 3d 791, 795, 802 (Cal. Ct. App. 2016) (upholding a provision of an employment contract that would require an employee to reimburse his employer for a "three-year, employer-sponsored educational program" should he leave his job during his first 30 months). As the Court of Appeal explained: "Repayment of the fronted costs of a voluntarily undertaken educational program, the benefits of which transcend any specific employment and are readily transportable, is not a restraint on employment." *Id.* at 802.

Because the California Supreme Court denied review in both *Hassey* and *USS-POSCO*, we do not have a definitive answer as to whether those cases correctly state California law. Even if they do, however, they stand at most for the proposition that a promise to reimburse an employer for "a voluntarily undertaken and valuable educational opportunity" is not a cognizable restraint under section 16600 because it does not "curb competition." *Id.* Both cases involve only a commitment to repay the cost of a training program if the employee leaves the employer; they do not address future employment. Far from hindering employee mobility, moreover, a training program is likely to *enhance* an employee's competitiveness on the job market,

even if the employee is ultimately required to pay for it. When limited to training reimbursement agreements, therefore, *Hassey* and *USS-POSCO* are consonant with the "settled legislative policy in favor of open competition" that underlies section 16600. *Edwards*, 189 P.3d at 291.

With these authorities in mind, we proceed to determine what constitutes a "restraint of a substantial character" under section 16600. *Golden I*, 782 F.3d at 1093. Taken together, the California cases suggest that the standard is undemanding. We know that a restraint can be "substantial" even if it is reasonable, *see Edwards*, 189 P.3d at 290 (rejecting the common law rule of reasonableness), and even if it is narrow, *see id.* at 292–93 (rejecting the Ninth Circuit's "narrow-restraint" exception). The California Supreme Court has applied section 16600 to invalidate a monetary penalty for engaging in competitive conduct, *see Chamberlain*, 156 P. at 480, an agreement to forfeit retirement benefits, *see Muggill*, 398 P.2d at 149, and a short-term promise not to compete or to solicit clients, *see Edwards*, 189 P.3d at 290–92, and it has even suggested that a stock option penalty or a promise not to solicit a small group of clients would fail under the statute, *see id.* at 292–93. And although two decisions of California's intermediate appellate courts have held that training reimbursement agreements are permissible under section 16600, *see USS-POSCO*, 197 Cal. Rptr. 3d at 802; *Hassey*, 78 Cal. Rptr. 3d at 634, there are good reasons to treat that situation as unique.

In light of these authorities, we conclude that a contractual provision imposes a restraint of a substantial character if it significantly or materially impedes a person's lawful profession, trade, or business. *See Substantial*, Black's Law Dictionary (10th ed. 2014) (defining the word

"substantial" to mean, among other things, "[o]f, relating to, or involving substance; material"). To meet this standard, a provision need not completely prohibit the business or professional activity at issue, nor does it need to be sufficient to dissuade a reasonable person from engaging in that activity. *See Edwards*, 189 P.3d at 292. But its restraining effect must be significant enough that its enforcement would implicate the policies of open competition and employee mobility that animate section 16600. *See id.* at 291.

We stress, however, that it will be the rare contractual restraint whose effect is so insubstantial that it escapes scrutiny under section 16600. California's legislature has clearly expressed its disapproval of contracts that restrain lawful business and professional activities, and we are bound to heed that policy judgment wherever its logic applies. With these considerations in mind, we turn now to the contractual provision at issue in this case.

**B**

Paragraph 7 impedes Dr. Golden's ability to practice medicine in three ways. First, it states that he "shall not be entitled to work or be reinstated" at "any facility owned or managed by CEP." Second, it bars him from working at "any CEP-contracted facility." Finally, it states that "if CEP contracts to provide services to, or acquires rights in" a facility where Dr. Golden is *currently* working as an emergency room physician or a hospitalist, CEP "has the right to and will terminate" him from that employment "without any liability whatsoever." The second and third of these three provisions substantially restrain Dr. Golden's practice of medicine and are therefore barred by section 16600.

The first provision pertains only to Dr. Golden's future employment at CEP. To the extent that it prevents him from being reinstated at any of his prior CEP worksites—which consist of a single emergency room and a handful of nonemergency clinics—its impediment to medical practice is minimal. And to the extent that it provides that Dr. Golden "shall not be entitled" to work at any other facility owned or managed by CEP, it simply restates the obvious proposition that an employee does not have a general right to work for an employer without the employer's consent.[4] Insofar as Paragraph 7 bars Dr. Golden from future employment at facilities owned or managed by CEP, therefore, it does not impose a substantial restraint on his medical practice. *See Golden I*, 782 F.3d at 1093 (Kozinski, J., dissenting) (noting that "[t]he provision barring Dr. Golden from current employment by CEP cannot possibly" violate section 16600, because if it did, "few employment disputes could ever be settled").[5]

---

[4] Indeed, even Dr. Golden's partnership agreement with CEP gave him no right to work at any CEP facility. Instead, it required him to "apply for available work at a site, go through an interviewing and credentialing process, and . . . be accepted to the medical staff of the service location."

[5] The dissent contends that our "approval of this restraint runs contrary to [our] own legal standard," because "a provision that prevents Dr. Golden from practicing his profession with one of the largest providers of medical services in California" is "surely" a restraint of a substantial character. Dissent at 24 n. 2. But the dissent ignores the fact that this provision merely codifies a preexisting state of affairs between the parties. Dr. Golden has no right to work at CEP: even absent the settlement agreement, he could not work at CEP without CEP's consent. Conversely, should CEP and Dr. Golden later mutually agree to reinstate their employment relationship, a contrary provision of a prior contract between them would not preclude them from doing so. Thus, far from

The remainder of Paragraph 7, however, affects not only Dr. Golden's employment at CEP itself, but also his current and future employment at third-party facilities. For example, Paragraph 7 bars Dr. Golden from working at "any CEP-contracted facility." Under a fair reading of this provision, Dr. Golden would be ineligible for employment in *any* department of a hospital where CEP has a contract to provide, say, anesthesiology services—even if he would never have any contact with CEP's staff.**[6]** Therefore, if Dr. Golden were compelled to sign the settlement agreement, CEP would be entitled to terminate him from his current employment at four facilities where CEP also has contracts.**[7]**

---

placing a restraint of a substantial character on Dr. Golden's medical practice, this part of Paragraph 7 imposes no restraint at all.

**[6]** In such a case, perhaps, CEP might not have the authority to prevent the third-party hospital from hiring Dr. Golden. By accepting employment at a facility where CEP has a contract, however, Dr. Golden would be in breach of Paragraph 7, which states that he "shall not be entitled to work" at such facilities.

**[7]** Dr. Golden stated in his declaration that if he were compelled to sign the agreement, "CEP [could] and would fire me from all of my present jobs because CEP has a contract and gets paid by the same people who pay me." The district court ruled Dr. Golden's declaration inadmissible on this point due to lack of personal knowledge. But CEP conceded in a reply brief below that, "[a]s [Dr. Golden] correctly notes in his Declaration, CEP also has or had contracts for services with facilities that are owned and/or operated and/or otherwise affiliated with" the facilities where Dr. Golden is presently employed. In light of this concession, we think it proper to consider Dr. Golden's assertion.

The dissent claims that, in so doing, we "cursorily overrule[] the district court's exclusion of this testimony." Dissent at 29. Not so. Dr. Golden has not asked us to review the district court's evidentiary ruling, and we do not do so here. Instead, we rely only on a concession made by CEP and the plain language of Paragraph 7, which states that CEP

Paragraph 7 also states that CEP "has the right to and will terminate" Dr. Golden from a position as an emergency room physician or a hospitalist at any facility where CEP *later* contracts or "acquires rights."[8]  This means that if Dr. Golden were employed as a hospitalist or an emergency room physician, and if CEP later acquired a contract to provide, say, psychiatry services at his hospital, CEP would "have the right to and [would]" unilaterally terminate his employment.

This interference with Dr. Golden's ability to seek or maintain employment with third parties easily rises to the level of a substantial restraint, especially given the size of CEP's business in California.[9]  CEP currently staffs 160 facilities in the state—including hospitals, trauma centers, urgent care clinics, and skilled nursing facilities—and it handles between twenty-five and thirty percent of the state's emergency room admissions.  Moreover, CEP appears to be

---

"has the right to and will" terminate Dr. Golden from employment with any employer who contracts with CEP.

[8] The record is unclear as to the exact meaning of the phrase "acquires rights" in Paragraph 7.  Indeed, one CEP partner testified at his deposition that he had "no idea what it means."  But to the extent that it suggests that CEP could fire Dr. Golden from a facility where CEP acquires "rights" other than the contractual right to staff and operate the facility—an ownership interest, for example—it only broadens the scope of Paragraph 7's applicability.

[9] Indeed, we think it possible that even a smaller business with a more limited network of contractual relationships could run afoul of section 16600 by barring a former employee from current or future employment with its contractual partners.  We need say no more than this, however, because here the restraint imposed by Paragraph 7 is clearly substantial.

growing: according to its own records, the group's market share has increased steadily over the past decade or so, moving from around twenty percent of all emergency room admissions in California in 2006 to just over twenty-seven percent in 2014.[10]  These facts persuade us that Paragraph 7's effect on Dr. Golden's medical practice is substantial, and that section 16600 therefore applies.

CEP's arguments against the application of section 16600 are unpersuasive.  CEP's main point is that we should review for clear error the district court's determination that Paragraph 7 is not a restraint of a substantial character, and that Dr. Golden has identified no such error here.  *See Wash. Mut., Inc. v. United States*, 856 F.3d 711, 721 (9th Cir. 2017) (explaining that reversal under clear error review requires "a definite and firm conviction that a mistake has been made" (citation omitted)).  We do not think—and Dr. Golden does not argue—that any specific factual finding made by the district court was clearly erroneous.  But as we have already said, the question whether a restraint is one of a substantial character is a mixed question of law and fact; thus, although we defer to the district court's factual findings, we review *de novo* its determination that Paragraph 7 is not a substantial restraint.  *See In re Cherrett*, 873 F.3d at 1066.  And as we

---

**[10]** In his declaration, CEP's chief operating officer admits that CEP has "rather ambitious" plans for expansion, but he states that the group anticipates that its future expansion will take place primarily outside of California, because "so many of the service locations in the state are part of the Kaiser system" and because "it is extremely unlikely that any medical group other than Kaiser would staff a Kaiser-owned service location."  Nothing in the agreement itself guarantees that CEP will adhere to its stated plans, however, and CEP's growing share of California's market for emergency room services suggests that its business in the state is growing as well.

have already explained, the district court erred in making that determination here.

Next, CEP suggests that Paragraph 7 does not impose a substantial restraint to the extent that it impedes Dr. Golden's ability to practice as an emergency room physician, because that position does not appear to be the focus of his current practice. At his deposition, for example, Dr. Golden testified that he no longer practices emergency medicine and that he had not applied for a position in that field since 2011. And Dr. Golden's CV lists seven specialties besides emergency medicine—starting with geriatrics, the specialty in which he completed his fellowship—which further suggests that Dr. Golden's medical practice extends beyond emergency medicine.

"A person's 'profession' under section 16600 is not so expansive [as] to include all work for which he is qualified." *Campbell v. Bd. of Trs. of Leland Stanford Junior Univ.*, 817 F.2d 499, 503 (9th Cir. 1987). But Dr. Golden worked as an emergency room physician for three years before he was terminated by CEP, and he testified at his deposition that he still works as a hospitalist. Thus, work as an emergency room physician and a hospitalist is included within his "profession" for purposes of section 16600. And in any case, Paragraph 7 does not only restrain Dr. Golden from holding these positions: as we have already said, it would also prevent him from practicing any type of medicine at a facility where CEP has a contract. Even if emergency medicine were not properly characterized as Dr. Golden's current profession, then, Paragraph 7 would still restrain other aspects of his medical practice—including his work as a hospitalist.

CEP also argues that Paragraph 7 does not substantially restrain Dr. Golden from practicing emergency medicine

because his lack of board certification would independently preclude him from working at most emergency rooms. But CEP does not argue that Dr. Golden's lack of board certification prohibits him from practicing as a hospitalist. Moreover, there is no dispute that if Dr. Golden were to become board certified in emergency medicine, the only restraint on his ability to practice that specialty would then be Paragraph 7.

Finally, we reject the dissent's contention that our analysis is improperly based on speculation about events that may or may not occur should Paragraph 7 be allowed to take effect. *See* Dissent at 23 (citing *Golden I*, 782 F.3d at 1094 (Kozinski, J., dissenting)); *see also id.* at 24–30 (arguing that Dr. Golden might not ultimately work at a facility where CEP later contracts to provide services, that CEP might not have the authority to fire Dr. Golden from such facilities, and that CEP might not continue to grow in California). Paragraph 7 is unequivocal: it states that Dr. Golden "shall not be entitled to work" at any facility where CEP has a contract, and that CEP "has the right to and will terminate" Dr. Golden's employment if it later contracts with a facility where he is working as a hospitalist or emergency room physician. Far from being "highly speculative," Dissent at 22, these future events—the ones on which we base our decision—are expressly contemplated by the language of the contract before us.[11] And in any case, the dissent's argument

---

[11] Moreover, even if it were proper to require Dr. Golden to prove that CEP would likely enforce Paragraph 7 according to its plain terms, there is some evidence in the record to support that conclusion. For example, Dr. Golden stated in his declaration that he was terminated from a position as an emergency room physician in late 2010, shortly after CEP took over the contract for the emergency room where he was working. And although the dissent contends that this was because Dr. Golden was not board certified or board eligible, *see* Dissent at 26 n.4,

was rejected by the majority in *Golden I*. *See* 782 F.3d at 1088 (concluding that Dr. Golden's challenge to Paragraph 7 was ripe because his "legal interest in this case, stated precisely, concerns the *present* enforcement of the settlement rather than the *future* interaction between the no-employment provision and his emergency-medicine practice").[12]  We are bound by that conclusion here.

In sum, the text of section 16600, the California courts' interpretation of that text, and the statute's underlying legislative policy together persuade us that the statute applies to any professional restraint that substantially—i.e., significantly or materially—restrains a person's lawful profession, trade, or business.  Under this standard, Paragraph 7 survives to the extent that it bars Dr. Golden from working at facilities that are owned or operated by CEP, but it fails to the extent that it prevents him from working for employers that have contracts with CEP and to the extent that it permits CEP to terminate him from existing employment in facilities that are not owned by CEP.  Thus, because CEP does not argue that any exception to section 16600 applies, and because the parties do not dispute that Paragraph 7 is material to the settlement agreement, *see*

---

Dr. Golden stated in his declaration that "there were [other] non-[board eligible or board certified] doctors" employed at that emergency room "who were not terminated" when CEP took over.

[12] The dissent cites this language from *Golden I* for the proposition that we "cannot rely" on future events in evaluating Paragraph 7.  Dissent at 27 n.6.  But this is not what *Golden I* said.  Rather, *Golden I* said that the "legal interest" that Dr. Golden sought to vindicate was the contract's present invalidity—not its invalidity at some future point in time—such that his case was ripe.  *See* 782 F.3d at 1088 ("[Dr. Golden] argues that, under the State's business and professions code, the agreement is *currently* void.").  Our holding is entirely consistent with this proposition.

*Golden I*, 782 F.3d at 1088 n.2, the entire agreement is void, and the district court abused its discretion in ordering Dr. Golden to sign it.

We therefore **REVERSE** the district court's order directing Dr. Golden to sign the settlement agreement and **REMAND** for further proceedings consistent with this opinion.

---

M. SMITH, Circuit Judge, dissenting:

Dr. Golden filed a lawsuit against CEP when it terminated his medical staff privileges, allegedly because of poor performance. Just before trial was to begin, the parties reached a settlement agreement in which CEP agreed to pay Dr. Golden some money, and he agreed to give up any opportunity to work again for CEP. At that point, however, this dispute ceased being a typical employment dispute and metastasized into one of those cases that only Franz Kafka could love. First, when the parties finalized the settlement agreement in writing, they appeared before a magistrate judge to confirm their agreement, at which appearance Dr. Golden expressly told the judge that he agreed with the terms of the settlement agreement. Apparently, his word meant nothing. Shortly thereafter, Dr. Golden backed out of the settlement agreement, and refused to sign the settlement document, which he knew stiffed his lawyer out of the contingency fee he had earned for representing Dr. Golden for three years. Then, undercutting the quid pro quo underlying the entire settlement, Dr. Golden claimed retroactively that the reason he refused to sign the settlement agreement to which he had assented in open court was that it violated California Business and Professions Code § 16600. This is sheer humbug, and it is lamentable that the

change in California law conjured by the majority has the effect of rewarding Dr. Golden's dishonorable conduct.

The parties are before us for a second time, disputing whether the district court abused its discretion in concluding that the settlement agreement did not constitute a restraint of a substantial character in violation of section 16600. I respectfully dissent because the majority concludes that the agreement violates section 16600 based primarily on a series of highly speculative future professional restraints that may or may not happen, and because the district court followed our guidance and applied it faithfully to the facts.

Section 16600 bars contracts that restrain an individual from "engaging in a lawful profession, trade, or business of any kind." In *Edwards v. Arthur Andersen LLP*, the California Supreme Court evaluated the validity of non-competition agreements under section 16600. The court rejected a rule of reasonableness approach due to section 16600's "settled legislative policy in favor of open competition and employee mobility." 189 P.3d 285, 288, 291 (Cal. 2008). *Edwards* further declined to accept a "narrow-restraint" exception that we previously adopted. *See id.* at 290–92.

In *Golden v. California Emergency Physicians Medical Group* (*Golden I*), we expanded section 16600's application to "other contractual restraints on professional practice." 782 F.3d 1083, 1093 (9th Cir. 2015). However, we did not extend *Edwards* to prohibit *all* restraints on one's profession. Instead, section 16600 bars only restraints "of a substantial character." *Id.*; *see Chamberlain v. Augustine*, 156 P. 479, 480 (Cal. 1916). Therefore, *Edwards*'s admonition against a "narrow-restraint" exception is limited to "employee noncompetition agreements," 189 P.3d at 288, and other contractual restraints are subject to a "restraint of a

substantial character" standard, *see Golden I*, 782 F.3d at 1093; *see also In re J.T. Thorpe, Inc.*, 870 F.3d 1121, 1139 (9th Cir. 2017) (Korman, J., dissenting).[1]

Until today, no court has defined what constitutes a "restraint of a substantial character" under California law. Rather, we have emphasized that there is no one-size-fits-all approach to this inquiry. We have acknowledged that this is a more "stringent rule" than the traditional "rule of reasonableness." *Golden I*, 782 F.3d at 1091 n.4 (quoting Restatement (Second) of Contracts § 188 (1981)). More importantly, we have acknowledged that this is a fact-specific inquiry. *See id.* at 1093. Indeed, the foundational case states that whether an agreement constitutes a "restraint of a substantial character" requires consideration of "[t]he circumstances surrounding the transaction." *Chamberlain*, 156 P. at 480.

On remand, the district court "conduct[ed] further fact-finding" on what we acknowledged was a "relatively undeveloped" record and reached the proper result. *See Golden I*, 782 F.3d at 1093. First, the district court correctly applied the law to the facts before it and therefore did not abuse its discretion in granting the motion to enforce the settlement agreement. Second, as warned by the dissent in *Golden I*, any potential restraint imposed by Paragraph 7 is too speculative to "serve as an excuse for Dr. Golden to finagle his way out of his contract." *Id.* at 1094 (Kozinski, J., dissenting). The evidence before the district court

---

[1] Under the majority's analysis of *Edwards* any restraint, no matter how "narrow," is impermissible. Whether or not this is a correct interpretation of *Edwards*, we are bound by our prior decision in *Golden I*, as was the district court. *See Int'l Bus. Machs. Corp. v. Bajorek*, 191 F.3d 1033, 1041 (9th Cir. 1999) ("We are not free to read California law without deferring to our own precedent on how to construe it.").

provides only "remote [and] contingent" scenarios that may or may not impose a substantial restraint on Dr. Golden's profession at some unknown time in the future. *Id.* For these reasons, the district court did not abuse its discretion.

Like the majority, I divide Paragraph 7 into three categories. I agree with the majority that the first category—the bar on Dr. Golden from employment at facilities owned or managed by CEP—cannot constitute a restraint of a substantial character.[2] *See id.* at 1093 ("The provision barring Dr. Golden from current employment by CEP cannot possibly violate . . . [section] 16600 . . . . If this violates section 16600, few employment disputes could ever be settled."). I disagree with the majority that the remaining two categories—(1) that "Golden shall not be entitled to work or be reinstated at any CEP-contracted facility" and (2) "CEP has the right to and will terminate Golden" from an emergency room physician or hospitalist at any facility where CEP later contracts or acquires rights[3]—violate section 16600.

---

[2] The majority's approval of this restraint runs contrary to its own legal standard. The majority concludes that a restraint of a substantial character is any restraint that "significantly or materially impedes a person's lawful profession, trade or business." Under the majority's legal standard, surely a provision that prevents Dr. Golden from practicing his profession with one of the largest providers of medical services in California is a restraint of a substantial character. The majority's divergent conclusions between category one versus categories two and three illustrate how difficult it is to cabin the legal standard produced by the majority.

[3] To the extent that "acquires rights" includes scenarios where CEP owns or manages a facility, this would fall within the first category, which does not constitute a restraint of a substantial character. To the extent that this term is unclear, it was Dr. Golden's burden to prove that

Although there is no controlling authority directly on point, a review of the relevant cases is helpful. Paragraph 7 bears no resemblance to the onerous restraints that the California Supreme Court invalidated in *Chamberlain* and *Edwards*. The agreement in *Chamberlain* required the defendant, who sold stock in his company, to pay the purchaser $5,000 if he became directly or indirectly interested in a similar business in the next three years. 156 P. at 479–80. This is, without a doubt, a "restraint of a substantial character"—it barred the defendant from engaging in an entire "profession, trade, or business." *See* Cal. Bus. & Prof. Code § 16600. In *Edwards*, the California Supreme Court struck down a non-competition agreement that barred an accountant from providing accounting services to former clients for eighteen months and barred the accountant from soliciting his former employer's clients for twelve months. 189 P.3d at 292.

The only intervening state court decision since *Golden I*, *USS-POSCO Industries v. Case*, rests at the other end of the spectrum. There, the California Court of Appeal concluded that a clause requiring the repayment of costs for employer-provided training if an employee left the job within a certain time did not violate section 16600. 197 Cal. Rptr. 3d 791, 800–01 (Ct. App. 2016). The court held that, unlike the provisions in *Edwards* and *Chamberlain*, the provision did not restrain the employee from engaging in his chosen profession. *Id.* at 801–02. It discouraged leaving for a certain length of time by requiring repayment of educational training funds, but this did not rise to the level of a restraint

---

this term violated public policy, a burden he did not carry. *See Rosen v. State Farm Gen. Ins. Co.*, 70 P.3d 351, 359 (Cal. 2003).

of a substantial character in violation of section 16600. *See id.* at 802.

In light of this background, the district court did not abuse its discretion in concluding that the remainder of Paragraph 7 was not a restraint of a substantial character. The contracts in *Edwards* and *Chamberlain* barred individuals from engaging in their chosen profession. In contrast, Dr. Golden has been employed, and has not been denied any position for which he has applied,[4] since this litigation began. Nor can Dr. Golden point to any evidence that he would be fired, actually restrained, or barred from engaging in his profession upon signing the settlement agreement.

In addition, Paragraph 7 limits employment only with CEP or CEP-affiliated facilities.[5] Dr. Golden is free to engage as a hospitalist, emergency room physician, or in any other medical specialty for entities unaffiliated with CEP, which is far from a "curb [on] competition," *id.*, or a limitation on "open competition," *see Edwards*, 189 P.3d at 290. Similar to the provision in *USS-POSCO*, Paragraph 7 imposes certain restrictions on future employment options,

---

[4] The majority points to Dr. Golden's termination from a position as an emergency room physician shortly after CEP took over the contract for that emergency room. Dr. Golden was terminated because he was not board certified or board eligible in emergency medicine, as required by CEP. As discussed more thoroughly below, his termination and his inability to find employment on this basis is a restraint imposed by his insufficient qualifications, not Paragraph 7.

[5] CEP's handling of twenty-five to thirty percent of emergency room admissions for California (excluding specialty hospitals) is irrelevant to our inquiry, because the provision barring Dr. Golden from working for CEP is not void under section 16600.

but does not curb competition or substantially restrain Dr. Golden's ability to engage in his chosen profession. Therefore, Paragraph 7 is more akin to the provision upheld in *USS-POSCO* than the restraints struck down in *Chamberlain* and *Edwards*.

More importantly, even if the two remaining categories could constitute an impermissible restraint, the evidence— including the facts found by the district court—indicate that any potential restraint remains too speculative to determine the outcome in this case.[6] As the dissent in *Golden I* forewarned: "We have no way of knowing whether this part of the settlement agreement will ever come into play, as its enforcement depends on numerous circumstances that are not capable of determination at this time . . . ." *Golden I*, 782 F.3d at 1093 (Kozinski, J., dissenting). The majority treats remote and contingent scenarios as if they were certainties in order to justify voiding the settlement agreement. In doing so, the majority expands the scope of section 16600 and preserves for Dr. Golden "an unfettered

---

[6] The majority suggests that this argument is precluded by our decision in *Golden I* that Dr. Golden's challenge to Paragraph 7 is ripe. I disagree. In *Golden I*, we concluded that Dr. Golden's interest "concerns the *present* enforcement of the settlement" and therefore this case is ripe for adjudication. 782 F.3d at 1088. The present enforcement of the settlement, however, cannot rely upon "the *future* interaction between the no-employment provision and his [medical] practice." *See id.* Ignoring this guidance, the majority "base[s] [its] decision" on the interaction between "future events" and Dr. Golden's medical practice. Similarly, the majority's position that all of the future events it relies upon "are expressly contemplated" by Paragraph 7 is overstated. For example, Paragraph 7 does not expressly contemplate CEP's future growth in California. To strike down Paragraph 7 requires facts indicating that it *will* substantially restrain Dr. Golden, not that it *may* substantially restrain Dr. Golden.

right to employment . . . , no matter how remote or contingent." *Id.* at 1093–94.

For instance, the majority suggests that Paragraph 7 may bar Dr. Golden from working as a hospitalist at a facility if CEP later contracts to provide anesthesiology services at that facility. First, it is speculative whether Dr. Golden will work as a hospitalist at a facility where CEP later contracts to provide unrelated services. Second, even if this did occur, we do not know now whether CEP, as a contractor of unrelated services, would have "the right to and [would] terminate Golden" from his position. Indeed, the majority recognizes that CEP might not have the authority to prevent the third-party hospital from hiring Dr. Golden or to require the third-party hospital to fire Dr. Golden.**[7]** Because we do not know whether CEP will, at some unknown time, be able to "interfere[] with Dr. Golden's ability to seek or maintain employment with third parties," it is improper to hold that Paragraph 7 constitutes an actual restraint of a substantial character.

Similarly, Dr. Golden's argument that he would be fired immediately from all his current jobs if the settlement agreement is enforced is baseless. The only evidence that Dr. Golden proffers is his self-serving affidavit. However, the district court ruled Dr. Golden's declaration on this point inadmissible due to a lack of personal knowledge, and Dr. Golden fails to explain how the district court abused its discretion in doing so. *See United States v. Lloyd*, 807 F.3d 1128, 1151 (9th Cir. 2015). Therefore, there is no factual

---

**[7]** The majority suggests that Dr. Golden would breach the agreement if he worked at a facility where CEP has a contract. This hypothetical depends on CEP pursuing a breach of contract claim against CEP, which may not occur.

basis to conclude that he would be fired immediately from all his current jobs.

The majority, in a footnote, cursorily overrules the district court's exclusion of this testimony. This is error. First, the majority fails to provide a legal basis for concluding that the district court abused its discretion in excluding this portion of Dr. Golden's affidavit. Second, it relies on specious reasoning. CEP conceded that it contracts with facilities that employ Dr. Golden; however, CEP did not concede that Dr. Golden would be fired immediately from his present jobs if the court enforced the settlement agreement. The majority makes this inferential leap without justification. Moreover, as stated above, it is not enough to state summarily that CEP will terminate Dr. Golden from any employer who contracts with CEP because we do not know whether CEP would have the authority to do so.

The majority also points to CEP's growth in California in support of its view that the agreement will substantially restrain Dr. Golden's employment with CEP-affiliated facilities.[8] CEP's presence has grown in California in the past decade. Nevertheless, past performance is not necessarily indicative of future results: CEP's previous growth does not mean that its future growth in California is certain, or even likely. Indeed, CEP's chief operating officer states that CEP's future growth is aimed outside of California due to the extensive Kaiser system in California. CEP has plans to contract with only one facility in Northern

---

[8] The majority notes that one type of facility that CEP currently staffs is urgent care centers. Under certain conditions, Paragraph 7 does not bar Dr. Golden from working in CEP-owned or contracted urgent care facilities.

California, where Dr. Golden currently resides and works.**[9]**
Further, if CEP's current presence in California was
sufficient in and of itself, we would have declared Paragraph
7 unlawful in *Golden I* based on CEP's large presence,
782 F.3d at 1084, instead of remanding for further fact-
finding, *id.* at 1093.

Last, the majority's conclusion that Paragraph 7 imposes
an impermissible restraint on his ability to practice
emergency medicine is unsupported by the record. Dr.
Golden did practice emergency medicine for a few years
prior to 2011. However, the record indicates that he would
not now be qualified to work at a CEP-affiliated emergency
facility for reasons independent of Paragraph 7—he is not
board certified in emergency medicine. If a person's
profession does not necessarily "include all work for which
he is qualified," surely it goes without saying that Dr.
Golden's profession does not include work for which he is
not qualified. *See Campbell v. Bd. of Trs. of Leland Stanford
Junior Univ.*, 817 F.2d 499, 503 (9th Cir. 1987). Therefore,
any restraint on Dr. Golden's ability to practice emergency
medicine is due to his want of professional credentials, and
not as a consequence of Paragraph 7.

The majority's last resort is to rely on further
speculation: *If* Dr. Golden is qualified to become board
certified (which is uncertain at best), *if* he actually becomes
board certified, and *if* he decides to practice emergency

---

**[9]** Even assuming CEP is in the processing of growing more in
California, other speculative problems remain. For one, CEP generally
offers existing physicians at new facilities an opportunity to join CEP.
Although CEP has the power to unilaterally withhold an offer from an
existing physician at a new service location, it has not done so since at
least 2013. Whether CEP will deviate from its general practice is too
speculative to be relevant here.

medicine, then the only restraint on practicing that specialty with a CEP-affiliate is Paragraph 7. This scenario is too remote to serve as the basis for striking down Paragraph 7, invalidating the settlement agreement, and changing California law.

In sum, the settlement agreement would not substantially restrain Dr. Golden from engaging in his chosen profession. The only discernable limitation on his profession is that he can no longer work for CEP, which even the majority agrees does not violate section 16600. Even if the other provisions of Paragraph 7 may someday impose a substantial restraint, such future events are too speculative to justify reversing the district court today. Dr. Golden has been employed continuously since this litigation began and he cannot point to a single instance where Paragraph 7 will actually restrain his medical practice. Thus, to hold that Paragraph 7 constitutes a restraint of a substantial character is impermissibly speculative and erroneous.

In *Golden I*, we remanded this case to the district court with instructions to determine, based on the facts before it, whether the settlement agreement constitutes a restraint of a substantial character. The district court applied the correct law and did not rest its decision on a clearly erroneous finding of fact. *See Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1100 (9th Cir. 2006). The majority's opinion today limits employers and employees from entering into settlement agreements based on hypothetical scenarios that may or may not happen years down the road. Because the district court did not abuse its discretion in granting the motion to enforce the settlement agreement, I respectfully dissent.